UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KELLY IRISH,

                          Plaintiff,                    **ORDER**
                                                        18-CV-82-PKC-SJB
              *v.*

TROPICAL EMERALD LLC and RAINBOW USA,
INC.,

                          Defendants.
----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

        After a series of failed attempts to follow this Court's rules, including those on

page limitations, Defendants filed a motion for reconsideration regarding this Court's

December 23, 2020 order striking Stephen Fordyce as a witness and barring the

consideration of two documents: (1) an October 27, 2020 memo from Fordyce to

Jonathan Hersch ("Fordyce Memo"); and (2) Hersch's October 28, 2020 calculations on

financial impact ("Financial Calculations Memo").[1]  (Mot. for Recons. dated Feb. 1, 2021

("Mot."), Dkt. No. 62).

---

[1] Defendants first filed their motion for reconsideration on January 6, 2021. (Notice of Mot. for Recons. dated Jan. 6, 2021, Dkt. No. 51).  The supporting memorandum was 17 pages in length—three times the length of the original brief on these issues.  (*See* Defs.' Mem. of Law in Supp. of Their Mot. for Recons. dated Jan. 6, 2021, Dkt. No. 52).  The Court denied the motion without prejudice to renewal for failure to comply with the Court's Individual Practices.  (Order dated Jan. 11, 2021). Defendants subsequently moved for leave to file excess pages in its brief, (Mot. for Leave to File Excess Pages dated Jan. 12, 2021, Dkt. No. 56), which the Court denied, (Order dated Jan. 20, 2021).  Defendants filed a renewed letter motion for reconsideration, (*see* Mot. for Recons. dated Jan. 22, 2021, Dkt. No. 58), that used reduced font and margin sizing, rather than substantially changing the brief's contents.  The Court issued an order to show cause for failure to abide by the Court's rules and denied the renewed motion.  (Order to Show Cause dated Jan. 27, 2021).  Defendants then filed the current compliant motion for reconsideration.  (Mot.).

"To succeed on a motion for reconsideration, the movant carries a heavy burden. The movant must show 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *In re Taneja*, No. 17-CV-9429, 2019 WL 1949839, at *1 (S.D.N.Y. Apr. 19, 2019) (quoting *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)). "It is within the sound discretion of the district court whether or not to grant a motion for reconsideration." *Wyche v. KM Sys., Inc.*, No. 19-CV-7202, 2021 WL 1535529, at *1 (E.D.N.Y. Apr. 19, 2021) (quoting *Markel Am. Ins. Co. v. Linhart*, No. 11-CV-5094, 2012 WL 5879107, at *2 (E.D.N.Y. Nov. 16, 2012)). "In exercising this discretion, the court must be mindful that 'a motion for reconsideration is not favored and is properly granted only upon a showing of exceptional circumstances.'" *Id.* (quoting *Nakshin v. Holder*, 360 F. App'x 192, 193 (2d Cir. 2010)).

The parties do not dispute the chronology of events preceding the present motion. Fordyce was disclosed as a fact witness on October 15, 2020. (Mot. at 2). Prior to Hersch's scheduled October 29, 2020 deposition (which was eventually canceled by Plaintiff), he received the Fordyce Memo and prepared the Financial Calculations Memo. (*See id.* at 1). Those documents were produced to Plaintiff the day before the scheduled deposition. (*Id.*).

The parties part ways about everything else. Some background is appropriate. Fact discovery closed on May 8, 2020. (Order dated Mar. 17, 2020). Nonetheless, at a May 18, 2020 conference, the parties asked the Court to reopen fact discovery for a limited purpose: Defendants represented that the *only* fact discovery remaining was some additional depositions, including of Hersch and previously identified witnesses. (Tr. dated May 18, 2020 ("May 18, 2020 Tr."), Dkt. No. 66 at 6:22–7:06). The Court

permitted additional fact discovery to be taken for this limited purpose.  (Order dated

Dec. 23, 2020 ("Order"), Dkt. No. 48 at 2).  Fordyce was disclosed by Defendants in

October as a new witness, ostensibly because of the need for someone to discuss

conditions at Defendants' store and opine about the financial impact of the proposed

ADA compliance measures.  The Court found that this disclosure of a new fact witness—

after the close of fact discovery (and just over three weeks before the close of all

discovery on November 16, 2021)—was late, and therefore barred Fordyce under Rule

37.  (*Id*. at 4; Min. Entry and Order dated Oct. 15, 2020).  For that same reason, the

Court struck both the Fordyce and Financial Calculations Memos, and noting, in

addition, that Defendants were attempting to improperly introduce expert evidence

through a fact witness.

Defendants then moved for reconsideration.  Their objections to the Court's Rule

37 ruling are as meritless as they are misguided.  In reviewing whether a District Court's

Rule 37 sanction is appropriate, the Court of Appeals

> considers "(1) the party's explanation for the failure to comply with the
> [disclosure requirement]; (2) the importance of the testimony of the
> precluded witness[es]; (3) the prejudice suffered by the opposing party as a
> result of having to prepare to meet the new testimony; and (4) the possibility
> of a continuance."

*Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (alteration in original)

(quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir.

1997)).  These factors have been employed by District Courts in determining whether

imposition of sanctions is appropriate for discovery violations.  *See, e.g.*, *Harrison v.*

*Incorporated Village of Freeport*, No. 16-CV-2442, 2020 WL 6382637, at *5–6

(E.D.N.Y. Oct. 30, 2020) (considering these factors when determining whether to

3

preclude expert testimony not disclosed until after the close of discovery).  Under these factors, the Court's prior orders were appropriate.

As to the *first* factor, Defendants' explanation for the late disclosure of Fordyce and the Memos misapprehends their disclosure obligations.  Though the motion for reconsideration states that "the witness should not be stricken," (Mot. at 2), the body of the motion provides no pertinent—and certainly no persuasive— argument about why Fordyce should be permitted to act as a fact witness despite being disclosed late. Defendants generally say that the evidence was disclosed prior to the fact discovery cutoff, (Mot. at 3), when they disclosed Fordyce in October 2020.

That is quite wrong.  By October, fact discovery had been closed for several months, except for the very limited purpose of conducting the depositions identified by the parties at the May 18, 2020 conference, namely the deposition of the Plaintiff and three of Defendants' identified witnesses.  (May 18, 2020 Tr. at 6:22–7:06). Importantly, by October, the deadline to disclose the name of fact witnesses had passed, since the parties were only to conduct depositions of witnesses previously identified. Defendants' arguments, premised on the notion there was an open-ended fact discovery cutoff—including that new witnesses like Fordyce could be identified for the first time— are "frivolous."  *R.C.M. Exec. Gallery Corp. v. ROLS Cap. Co.*, No. 93-CV-8571, 1996 WL 30457, at *1 (S.D.N.Y. Jan. 25, 1996) ("The plaintiffs advance two arguments in support of their motion.  First, they contend that discovery is still open because depositions are continuing.  That argument is frivolous.  As noted above, the parties received numerous extensions of the discovery deadline.  When I permitted them to schedule specific depositions after the final deadline, I made clear that I was not extending that deadline for other types of discovery.  Therefore, the time for the

plaintiffs to supplement their interrogatory answers and identify expert witnesses has passed.").

Fordyce was not disclosed until after the fact-discovery deadline had passed. That necessarily makes his disclosure untimely under Rule 26(a).  Rule 26(a)(1) requires disclosure of fact witnesses in a timely fashion so the opposing party may take the discovery of that witness.

> Rule 26(a) . . . fulfills a critical function: transmitting formal notice from the disclosing party to the opposing party that the opposing party should be prepared for the disclosing party to use the information provided by the witness.  In the absence of such a disclosure, the opposing party can properly assume that its adversary will not rely upon that witness.

*Lebada v. N.Y.C. Dep't of Educ.*, No. 14-CV-758, 2016 WL 626059, at *5 (S.D.N.Y. Feb. 8, 2016), *report and recommendation adopted*, 2016 WL 8453417 (May 16, 2016). Disclosing a new witness at the end or after the discovery period gives little to no time to notice a deposition or to obtain documents from the witness in a reasonable manner, unless there is an extension of the discovery deadline.  And here, Defendants knew that the Court was not going to extend the fact discovery deadline—having done so many times before—because they, with Plaintiff, had represented that the only discovery remaining was depositions of previously identified witnesses.  (Order at 2–3).  The kind of late disclosure by Defendants in this case undermines this objective.

Yet Defendants still contend, because they only found out in October 2020 that Hersch needed Fordyce to be a witness, it was appropriate for Fordyce to be disclosed then and their disclosure was timely under Rule 26(a)(1).  (Mot. at 2).  That's not an explanation, but a restatement of the timeline of events.  "A party must make its initial disclosures based on the information reasonably available to it," Fed. R. Civ. P. 26(a)(1)(E), and interviewing a witness late in the process does not provide cover for a

revised disclosure, because compliance with the Rule turns on whether the information was "reasonably available," not on *when* a party or counsel chooses to find out the information. "A party is not excused from making its disclosures because it has not fully investigated the case[.]" *Id.* That is the situation here. *See, e.g.*, *Lincoln Rock, LLC v. City of Tampa*, No. 15-CV-1374, 2016 WL 6138653, at *11 (M.D. Fla. Oct. 21, 2016) (striking supplemental Rule 26 disclosure made two weeks before close of discovery).[2]

It may be that Hersch determined in October 2020 that he needed Fordyce's financial analysis, but that is not an explanation why Fordyce could not have been identified by Hersch—or by counsel—well before then. Lurking in the background is the suggestion that Hersch identified Fordyce in October 2020 because Hersch was a replacement witness, standing in for Thomas Magill, who passed away. (Mot. at 1). But Magill died in late 2019, and Defendants identified Hersch as the replacement witness in February 2020. (Defs.' Response in Opp'n to Mot. to Strike dated Nov. 4, 2020, Dkt. No. 46 at 3). To be sure, there were intervening events—COVID-19 delays and the need to let Defendants' law firm determine whether it could continue with their representation—but, even accounting for those delays, there was no adequate justification for first discussing Hersch's need for an additional witness, and disclosing that need, in late October 2020, months after telling the Court about the limited discovery to be completed. *Cf. Taylor v. N.Y. State Off. for People With Developmental*

---

[2] Defendants contend that the Court misunderstood and mistakenly assumed "that defense counsel knew this information prior to the May 18, 2020 status conference." (Mot. at 2). No so. It is quite obvious that defense counsel did not know that Hersch wanted another witness to give financial analysis to buttress his position. But that is not the point. Defense counsel was obligated to take reasonable steps to learn about what fact witnesses would support their clients' case, particularly before making representations to the Court about the scope of remaining discovery in the case.

*Disabilities*, No. 13-CV-740, 2016 WL 2858856, at *6 (N.D.N.Y. May 13, 2016) ("In assessing plaintiff's contention that she learned about the witnesses and the importance or relevance of their testimony only after reviewing defendants' document production, the undersigned notes that plaintiff does not explain why she would have not been aware of these witnesses prior to serving the September 17, 2015 witness list."); *Pal v. N.Y. Univ.*, No. 06-CV-5892, 2008 WL 2627614, at *4 (S.D.N.Y. June 30, 2008) ("Again focusing on the patients, NYU argues that its failure to identify them in its prior disclosures was justified because the patients 'have only recently offered to get involved' in the proceedings by signing a privilege waiver.  Although New York law prevented NYU from disclosing their identities without a waiver, NYU has not adduced any evidence that it made appropriate efforts to secure waivers earlier in this litigation.  Nor has NYU set forth the date when the patients signed their waivers.  NYU consequently has not shown that it lacked the ability to make its Rule 26(a)(1)(A) disclosures with respect to any of the newly-identified witnesses before discovery closed.").

Defendants also contend that the Court's remedy striking Fordyce was improper.  They argue that "controlling law" provides that Rule 37(c)(1) does not permit striking of evidence disclosed prior to the discovery deadline.  (Mot. at 3).  Only one of the cases Defendants point to is from the Second Circuit Court of Appeals, *Update Art, Inc. v. Modiin Publishing, Ltd.*, which is wholly inapposite; in that case, the Circuit upheld a Magistrate Judge's preclusion of evidences a sanction for discovery abuse leading up to a damages inquest and noted that, "although preclusion of evidence [is a] harsh remed[y] and should be imposed only in rare situations, [it] is necessary to achieve the purpose of Rule 37."  843 F.2d 67, 71 (2d Cir. 1988).  None of the other cases cited are from the Second Circuit Court of Appeals; they, therefore, could not be controlling.  Nor

could cases from this or other districts be "controlling." And none stand for the bright-line rule that disclosure—so long as provided before the discovery deadline, no matter how close to the deadline—is immune from a Rule 37(c) sanction. (Here, as discussed above, the disclosure here was *after*, not before, the fact discovery cutoff; all of Defendants cases are therefore inapposite). Rather, in each of those cases, the factual circumstances dictated that preclusion was not appropriate. Nor could those cases create such a bright-line rule, since such immunity from sanction would be contrary to Rule 26(a)(1), which requires "initial" disclosures, and Rule 26(a)(1)(E), which provides that "[a] party is not excused from making its disclosures because it has not fully investigated the case." Fed. R. Civ. P. 26(a)(1)(E).

As for the *second* factor, the importance of the testimony of the witness, Defendants' record is sparse, to say the least. The motion for reconsideration states that Defendants would be prejudiced if "Hersch should be precluded from using Fordyce's data without Fordyce's testimony." (Mot. at 5). But the motion does not explain how the absence of Fordyce's data or testimony affects Defendants' case; all that is said, over and over again, is that Hersch used Fordyce's information to estimate potential lost revenue. Yet the importance of that fact or issue to Defendants' defenses are not mentioned. And the Court cannot conclude absent Fordyce's testimony, what prejudice Defendants would suffer, if any.

As for the *third* factor, Defendants contend that Plaintiff suffered no prejudice. The contention has no merit. As the Court previously explained, prejudice exists because Defendants disclosed this witness after telling Plaintiff and the Court it had no other fact witnesses and that a short discovery extension was only necessary to complete deposition of the previously identified witnesses:

> When fact witnesses are disclosed well after fact discovery has closed it changes the trajectory of a case; here, Plaintiff's expert will have to adjust his findings to account for the new witnesses' testimony.  And it will occasion—with the attendant time and expense—of taking the deposition of another witness.  Such prejudice . . . [is] delay, cost, and a moving target of a defense[.]

(Order at 4).  And examining the document produced by Defendants, about which Fordyce will testify, makes this prejudice apparent.  The Fordyce Memo, dated October 27, 2020, lists items that would have to be removed from the sales floor (presumably to make the changes Plaintiff believes are necessary to make the location ADA-compliant). (*See* App. A ("App. A"), attached to Mot., Dkt. No. 62 at 1).  Based on Fordyce's view of what would need to be removed, Hersch projects the loss of income and profit to Defendants.  (*See* App. A, attached to Mot. for Leave to Electronically File Doc. Under Seal in Connection with Defs.' Mot. for Recons. dated Jan. 6, 2021, Dkt. No. 53, at 1–4). This case was first filed on January 5, 2018, nearly three years before Fordyce's walk-around analysis was prepared.  But Defendants have stated from the outset that they believe the changes Plaintiff is demanding are not reasonable and economically infeasible.  (*See* Answer dated Apr. 4, 2018, Dkt. No. 9, ¶ 103; Tr. dated Aug. 27, 2018, Dkt. No. 17 at 5:11–6:13; *see also* Tr. dated Apr. 3, 2019, Dkt. No. 22 at 12:07–:20; Tr. dated Nov. 26, 2019, Dkt. No. 65 at 4:07–:13).  For the factual basis for that assertion to be recast after all the fact witnesses had been identified, the other Defendants' witnesses already having already been deposed, during a discovery period that was opened up only for a limited purpose, is sandbagging Plaintiff.  To boot, it is an abrupt reversal of course.  On November 5, 2018, Defendants stated in a discovery response to Plaintiff that they "have no documents at this time which analyze 'the impact on the defendant from making all the pathways in Rainbow Shops complaint.'" (Defs.' Objs. and Resps. to

Pl.'s First Req. for Docs. dated Nov. 5, 2018, attached as Ex. 4 to Pl.'s Mot. to Strike

dated Oct. 29, 2020, Dkt. No. 41 at 4 (quoting Plaintiff's discovery request)).  The

parties proceeded to litigate the case on the basis of this understanding until Fordyce's

analysis was conducted and emerged some two years later.  As the Court said previously,

prejudice from this strategic maneuvering "exists aplenty."  (Order at 4).

   As part of its argument that there is no prejudice to Plaintiff, Defendants assert

that the Court can simply adjourn the deadlines and give the parties more time to

complete fact discovery.  This bears on the *fourth* factor—the feasibility of a

continuance.  Here, this rather straightforward ADA case has dragged on for years;

some of the delays occasioned through the parties' own doing, some for which they bear

no fault.  The Court has already extended the fact discovery deadline eight times.[3]  To be

sure, an extension of time can always cure the effects of a late disclosure.  But here,

Plaintiff has litigated case on reliance of certain theories and certain factual assumptions

that Defendants made about the evidence to be presented in their case.  As a result, it is

unlikely that the extension necessary would be short.  Expert discovery has not yet been

completed.  In any event,

> [l]ate disclosure is not harmless within the meaning of Rule 37 simply
> because there is time to reopen or to extend discovery.  If that were the
> determining factor, no court could preclude expert or other testimony that
> was unseasonably disclosed contrary to the discovery deadline dates set by
> the Court.

---

[3] *See* Order dated May 21, 2019 (based on joint motion); Order dated June 20, 2019 (based on joint motion); Order dated Aug. 26, 2019 (based on joint motion); Order dated Oct. 24, 2019; Min. Entry & Order dated Nov. 26, 2019; Order dated Feb. 21, 2020 (based on joint motion); Order dated Mar. 17, 2020 (based on joint motion); Min. Entry & Order dated May 18, 2020 (based on joint request).

*Hard Surface Sols., Inc. v. Sherwin-Williams Co.*, 271 F.R.D. 612, 617 (N.D. Ill. 2010). Therefore, "[w]hile a continuance is always theoretically possible," *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 76 (E.D.N.Y. 2012), where fact discovery is closed—as it is here, except for the limited purpose of deposing witnesses already identified—this factor "weighs against" the party making the late disclosure, *see id.* As such, the Court denies the motion for reconsideration with respect to the striking of Fordyce as a witness.

Turning to the two documents—the Fordyce Memo and the Financial Calculations Memo (collectively, "the Memos")—the Court also denies the motion for reconsideration. Defendants contend, in a variety of ways, that the Court either lacked the authority to strike the Memos or should have waited until the pre-trial *in limine* process to strike the Memos. These arguments comingle a number of concepts and rules and are ultimately without merit.

Defendants first say that the Court lacks the authority to strike the documents since they were produced in discovery, and the documents can only be excluded through the *in limine* motion process prior to trial. (*See* Mot. at 5). Rule 37(c)(1)—the same provision that permits a Court to strike an untimely witness who is disclosed late—applies to all forms of evidence: "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that *information* . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). "The purpose of the rule is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) (quoting *Ventra v. United States*, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000)). Preclusion is disfavored given its harsh effect, *see id.*, and to impose that sanction the Court applies the same four-part

test set forth in *Patterson*.  But nonetheless Defendants flunk that test when it is applied to the Memos.

Putting aside, for a moment, whether the Memos contain facts or opinions, at least one document was prepared by a person—Fordyce—who cannot testify about them (because he was disclosed late, as discussed).  And so, Defendants are using Hersch to testify about them.  Hersch produced the documents in connection with his testimony but admits at least one—the Fordyce Memo—was prepared by someone else.  Assuming that Hersch can testify about a document he did not create or prepare, both Memos should have been produced during the period in which documents were exchanged, not on the eve of Hersch's deposition and after the fact discovery deadline had passed.  In 2018, Defendants were asked for all documents that analyze the financial impact of ADA compliance, *see supra*, and they said they had no such documents.  Rule 26(e)(1) requires a party to supplement its responses to document requests—but it is required to do so in a "timely manner."  Fed. R. Civ. P. 26(e)(1).  Defendants say this disclosure of the Memos occurred immediately, as Hersch only asked for Fordyce's Memo when he was preparing for his deposition, and only created the Financial Calculations Memo based upon the information in the Fordyce Memo.  But that was too late, because fact discovery had closed—except to take certain depositions—meaning that all document

production should have been completed well before then.[4]  Their belated production prejudiced Plaintiff, who had prosecuted the entire case based on the understanding that there was no document prepared by a fact witness that contained economic analyses.  Extending the fact discovery deadline to accommodate this change in strategy would not cure the prejudice, and striking the Memos is appropriate.

Even accepting the premise that the timing was inevitable, Defendants still do not get to use these documents.  There is no dispute that the Memos are opinions.  The Fordyce Memo contains opinions on what merchandise could not be sold if Defendants' store was modified; the Financial Calculations Memo opines on the financial implications of those changes on revenue and profitability.  Defendants contend that the opinions are lay opinions that Hersch can testify about.  This argument misapprehends the nature of lay opinion testimony.

At least one of the Memos was prepared not by Hersch, but by Fordyce, and therefore any testimony Hersch provides could not be based on Hersch's own perceptions.  Because Hersch is not a Rule 30(b)(6) witness for Defendants, his lay opinion testimony must be limited to his own perceptions and observations.  That is the essence of Federal Rule of Evidence 701(a): "[i]f a witness is not testifying as an expert,

---

[4] Defendants say that they could not have produced the documents before October 2020 because that is when Fordyce and Hersch created them.  But that is too cute-by-half: Defendants should have asked Hersch well before a few days before the deposition what documents he was going to use and rely on, since document production was completed months before.  Defendants "had it within [their] power to collect all the evidence required" to defend their claims, but chose not to do so in a timely fashion. *Ebewo*, 309 F. Supp. 2d at 607.  That is the same problem with Defendants' arguments about Plaintiff's deposition notice, which asked Hersch to provide all documents that he reviewed in preparation for his deposition.  That Hersch reviewed the Memos in connection with his deposition does not make their creation or disclosure timely.  An untimely disclosure does not become timely because a witness reviews the document and then produces it in connection with his deposition.

testimony in the form of an opinion is limited to one that is: rationally based on the *witness's* perception." Fed. R. Evid. 701(a) (emphasis added). Even if Fordyce himself could testify about his Memo, Hersch cannot. *See, e.g.*, *Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 864 (7th Cir. 2009) ("To support this claim of Von der Ruhr's personal knowledge of the sepsis market, Septech cites only to a series of materials that Von der Ruhr read. While experts are allowed to give testimony based outside of their personal experience or observation, lay witnesses are not. . . . In this case, Von der Ruhr had no first hand knowledge of the sepsis market and would have relied entirely on information he had been told or had read."); *Cunningham v. Masterwear Corp.*, 569 F.3d 673, 676 (7th Cir. 2009) ("What the owner is not allowed to do is merely repeat another person's valuation, which was what Cunningham wanted to do." (citation omitted)).

Because the Fordyce Memo is not based on Hersch's perceptions, the Memos cannot be his lay opinion and is necessarily the expert opinion of Fordyce. (They could be Fordyce's lay opinions, but he cannot be a fact witnesses having not been timely disclosed). Defendants suggest that the Court should have waited to hear Hersch's testimony about the Fordyce Memo, before deciding he could not testify about it or it should be stricken. That may be appropriate when there is no advance knowledge of the provenance of the document or analysis; here, Defendants admit over and over throughout their papers that this Memo was prepared by Fordyce, not Hersch, and at Hersch's direction. (*See, e.g.*, Mot. at 1).

Because a party is not permitted to offer expert evidence in the guise of lay opinion, it is appropriate to strike such evidence. *Jacked Up, LLC v. Sara Lee Corp.*, No. 11-CV-3296, 2019 WL 1098992, at *10 (N.D. Tex. Mar. 8, 2019) (excluding damage

computations from summary judgment record, concluding they were outside of scope of Rule 701), *aff'd*, 807 F. App'x 344 (5th Cir. 2020) (per curiam).  Indeed, courts routinely strike affidavits or declarations of witnesses who attempt to offer expert opinions as a lay fact witness, including before trial.  *E.g.*, *id.*; *Echo, Inc. v. Timberland Machs. & Irrigation, Inc.*, No. 08-CV-7123, 2011 WL 148396, at *3 (N.D. Ill. Jan. 18, 2011) ("The opinions expressed in Mark Zeytoonjian's sworn statements fall outside the boundaries of lay opinion testimony. . . . We therefore grant Echo's motion to strike paragraphs 16– 108 of Mark Zeytoonjian's affidavit."), *aff'd*, 661 F.3d 959 (7th Cir. 2011).  The only difference between a declaration and the Fordyce Memo is that Fordyce did not make the statements in the Memo under oath.  But that does not make them any less amenable to being stricken.

To the extent Defendants contend that the Court's prior reliance on Rule 701 is improper at this stage of the case, the argument is misplaced.  Rule 701 stands apart from other Rules of Evidence in that it is intended to help police the boundaries of Federal Rules of Civil Procedure 16 and 26.  Fed. R. Evid. 701 advisory committee's note to 2000 amendment ("By channeling testimony that is actually expert testimony to Rule 702, the amendment [to Rule 701] also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 and Fed. R. Crim. P. 16 by simply calling an expert witness in the guise of a layperson."); *see* Gregory P. Joseph, *Emerging Expert Issues Under the 1993 Disclosure Amendments to the Federal Rules of Civil Procedure*, 164 F.R.D. 97, 108 (1996) (noting that "there is no good reason to allow what is essentially surprise expert testimony" and that "the Court should be vigilant to preclude manipulative conduct designed to thwart the expert disclosure and discovery process").  Here, after the parties disclosed the names of their experts,

Defendants offered Hersch to opine about Fordyce's analysis.  They cannot now use Hersch as a means of advancing expert analysis.

As to the Financial Calculations Memo, it is based on the Fordyce Memo.  Hersch took Fordyce's Memo—and its assumptions about which merchandise would have to be removed—and layered his own opinions about profit, loss, revenue, and other financial impact upon it.  This is a prototypical expert, not lay opinion, testimony.  To the extent that Hersch regularly conducted projections about financial impact, Defendants say nothing about Hersch's job or role, making it impossible to conclude that such financial projections would properly be considered his lay opinion. *Von der Ruhr*, 570 F.3d at 862–64  ("In the realm of lost profits, lay opinion testimony is allowed in limited circumstances where the witness bases his opinion on particularized knowledge, he possesses due to his position within the company.  For example, the owner of an established business with a documented history of profits may testify to his expectation of continued or expanded profits when that opinion is based on his 'knowledge and participation in the day-to-day affairs of [his] business.'" (alteration in original) (citation omitted) (quoting Fed. R. Evid. 701 advisory committee's note to 2000 amendment)).  And even if that was part of Hersch's customary role with Defendants, the Financial Projections Memo is an opinion about someone else's expert opinion, *i.e.*, Hersch's opinion about Fordyce's opinion that certain merchandise would have to be removed if compliance measures were implemented.  That is not lay opinion testimony permitted under Rule 701 for two reasons.  First, it is an opinion about someone else's perceptions and observations.  Hersch had no direct or first-hand knowledge of Fordyce's opinions or the assumptions used to make those opinions. *See Washington v. Kellwood Co.*, No. 05-CV-10034, 2016 WL 5680374, at *5 (S.D.N.Y. Sept. 30, 2016) ("Rule 701 assumes

that a business owner will make a business valuation based on his or her own personal experience of running the company."), *aff'd*, 714 F. App'x 35 (2d Cir. 2017).  Second, Hersch's opinions are based on hypothetical, not historical facts: if the ADA measures are implemented, and if they require the changes Fordyce suggests, what are the potential economic impacts?  That takes the opinions, and the Financial Calculations Memo, out of the realm of lay opinion testimony.  *Steves & Sons, Inc. v. JELD-WEN, Inc.*, No. 16-CV-545, 2018 WL 359479, at *3 (E.D. Va. Jan. 10, 2018) ("The distinguishing factor between cases that permitted and excluded testimony or evidence that involved future projection, such as future profits estimates, is the grounds on which the witness's extrapolation is based. In cases allowing such evidence, witnesses based their testimony primarily on 'historical or narrative facts that they had perceived'—that is, events that had already occurred." (alterations omitted) (quoting *MCI Telecomms. Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir. 1990))).  To the extent the Court should have concluded otherwise, Defendants cite no apposite authority compelling such a result.

For the foregoing reasons, Defendants' motion to reconsideration is denied.

SO ORDERED.

/s/ *Sanket J. Bulsara* May 6, 2021
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

17