UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KELLY IRISH,

                         Plaintiff,                         **ORDER**
                                                                         18-CV-82-PKC-SJB

     *v.*

TROPICAL EMERALD LLC and RAINBOW USA,
INC.,

                         Defendants.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

      A court may, pursuant to Rule 16(f), sanction a party for failing to obey a scheduling or other pretrial order. Fed. R. Civ. P. 16(f)(1)(C). Potential sanctions include "prohibiting the disobedient party from supporting or opposing designating claims or defense, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii); *see also* Fed. R. Civ. P. 16(f)(1) (incorporating Rule 37 sanctions for Rule 16 violations). Plaintiff Kelly Irish has filed a motion to strike an October 5, 2021 Declaration by Jonathan Hersch filed in support of Defendants' motion for summary judgment. (Letter Mot. to Strike dated Oct. 22, 2021 ("Mot."), Dkt. No. 75; Decl. of Jonathan Hersch In Supp. of Defs.' Mot. for Summ. J. dated Oct. 5, 2021 ("Hersch Decl."), attached as Ex. 1 to Mot., Dkt. No 75-1). Because the Declaration contains expert opinions from someone not designated as an expert, and any facts or lay opinions in the Declaration were disclosed long after the deadline for completing fact discovery, the motion to strike is granted.

      Some background is pertinent to the motion. This is an Americans with Disabilities Act ("ADA") case. A central issue in dispute is whether Defendants' discount

1

clothing store is ADA-compliant, and whether the steps Plaintiff alleges are necessary—making wider 36-inch aisles permanent—would cause unreasonable financial impact on the store. During discovery, Hersch was disclosed as a fact witness, and not as an expert. Prior to Hersch's first deposition, in October 2020, Defendants discovered the need to have "another fact witness to discuss certain conditions at Defendants' store." (Order dated Dec. 23, 2020, Dkt. No. 48 at 3). That witness was Steven Fordyce. Defendants proceeded to disclose Fordyce as a fact witness, and provided two documents that gauged the financial impact from the removal of merchandise required to make the wider aisles permanent.

The Court struck Fordyce as a witness, because he was not disclosed in a timely fashion and the belated disclosure—after the close of fact discovery—was prejudicial. (*Id.* at 4). The Court also struck the two documents: an October 28, 2020 memo from Fordyce to Hersch (the "Fordyce Memo") and a memo containing Hersch's calculations about financial impact (the "Financial Calculations Memo") (together, "the Memos"). (*Id.* at 5–7). In striking the Memos, the Court concluded that the "analysis [was] an opinion proffered by Defendants' employees," namely a financial impact "statement on the Defendants' 'removal of merchandise that would be necessitated by creating 36-inch-wide aisles.'" (*Id.* at 5) (citations omitted). The rationale for striking the Memos was that they contained expert opinions, not facts (or permissible lay opinion), and could only be offered by properly disclosed expert witnesses (which neither Fordyce nor Hersch was). The documents were

> produced well after this case was filed; . . . prepared ostensibly solely for the purpose of litigation, as opposed to in the ordinary course of Defendants' operations; and provided opinion testimony, not factual recitations. [And] [t]o the extent that this or similar analysis is part of an expert report or testimony, under the proposed schedule between the parties, such analysis

2

> is fair game. On the other hand, given its provenance and its content, no
> fact witness could proffer the document[s] or testify (*either for summary
> judgment or trial*)[.]

(*Id.* at 5) (emphasis added). Defendants argued that the documents contained lay opinions that could be offered by percipient fact witnesses. But "even if the opinions contained in the document[s] were proper lay opinions of a fact witness, the failure to disclose [them] . . . during the fact discovery phase" required that the documents be stricken. (*Id.* at 6–7). In a lengthy opinion, the Court denied Defendants' futile and meritless motions for reconsideration. *Irish v. Tropical Emerald LLC*, No. 18-CV-82, 2021 WL 1827115, at *5–7 (E.D.N.Y. May 6, 2021). Defendants did not object to either ruling or appeal to District Judge Chen.

Yet, like a bad case of déjà vu, here we are yet again. Even Yogi Berra would be shocked. Despite the Court's prior orders, the Declaration does precisely what the Court already ruled Hersch could not do: provide expert opinion testimony dressed up as a factual observation. His Declaration details a September 21, 2021 visit to Defendants' store. (Hersch Decl. ¶¶ 10–16). During the visit, Hersch spoke to employees and took measurements. (*Id.*). Based on this, he made an estimate about how much merchandise would have to be removed to create 36" inches of aisle space. (*Id.* ¶¶ 17–22; *see also id.* ¶ 23 ("Based on my September 21, 2021 visit to the Store, I estimated that the total number of merchandise units that would need to be removed to ensure there is a minimum of 36 inches of space surrounding each merchandise rack is 10,608 units, or 13% of the Store's current inventory level.")). Then he offers his self-described "opinion" that "removal of such merchandise racks would have a significant negative impact of more than 13% on the sales revenue of the Store." (*Id.* ¶ 26).

3

If this recital all sounds familiar, it should. The Court's prior order struck the same opinions because they were expert opinions. And such expert opinions could not be offered by Hersch, a fact witness. When Hersch previously attempted to provide the same opinions using the Memos—the Fordyce Memo and the Financial Calculations Memo—the Court concluded:

> There is no dispute that the Memos are opinions. The Fordyce Memo contains opinions on what merchandise could not be sold if Defendants' store was modified; the Financial Calculations Memo opines on the financial implications of those changes on revenue and profitability. Defendants contend that the opinions are lay opinions that Hersch can testify about. This argument misapprehends the nature of lay opinion testimony.

*Irish*, 2021 WL 1827115, at *6. Defendants try to justify the Hersch Declaration on the grounds that this time around the opinions are based on Hersch's own observations. (Letter Mot. in Opp'n to Mot. to Strike dated Oct. 29, 2021, Dkt. No. 77 at 2). And previously, they argue, his opinions were based on observations of another witness (Fordyce), upon which Hersch had layered his expert gloss. (*See* Mot. for Recons. dated Feb. 1, 2021, Dkt. No. 62 at 1). Defendants badly misread the Court's prior opinions. The Court did note that the Financial Calculations Memo was based on Fordyce's observations. Yet Defendants ignore the Court's conclusion:

> As to the Financial Calculations Memo, it is based on the Fordyce Memo. Hersch took Fordyce's Memo—and its assumptions about which merchandise would have to be removed—and layered his own opinions about profit, loss, revenue, and other financial impact upon it. This is a prototypical expert, not lay opinion, testimony. *To the extent that Hersch regularly conducted projections about financial impact, Defendants say nothing about Hersch's job or role, making it impossible to conclude that such financial projections would properly be considered his lay opinion.*

*Irish*, 2021 WL 1827115, at *7. In other words, if Hersch were going to offer lay opinion testimony about financial impact, Defendants would have to establish that Hersch did

4

such financial analysis as a regular part of his job.[1] *E.g.*, *Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403 (3d Cir. 1980) ("The personal knowledge of appellant's balance sheets acquired by Zeitz as Teen-Ed's accountant was clearly sufficient under Rule 602 to qualify him as a witness eligible under Rule 701 to testify to his opinion of how lost profits could be calculated and to inferences that he could draw from his perception of Teen-Ed's books."). They did not do so before, and have not done so now. Nothing in the Declaration says that Hersch's job responsibilities or prior work experience involved revenue calculations or financial analysis. (Hersch Decl. ¶¶2–3). Without such experience or responsibilities, Hersch is offering opinions that are not lay, but expert. *Von der Ruhr v. Immtech Int'l Inc.*, 570 F.3d 858, 864 (7th Cir. 2009) ("While experts are allowed to give testimony based outside of their personal experience or observation, lay witnesses are not."); *e.g.*, *id.* at 863 ("Von der Ruhr[] . . . intended to testify to his expectation of millions of dollars in profits . . . It is difficult to imagine how anyone in this situation could possess the necessary personal knowledge to give a useful lay opinion based on his perception and it is clear that Von der Ruhr did not have such knowledge. Von der Ruhr had no personal experience with obtaining a corporate licensing agreement for a pharmaceutical or treatment of any kind, had never brought a pharmaceutical to market, and had never made a profit from a pharmaceutical.").

     If the preceding is somewhat confusing or makes your head spin, it likely should. But here is where first principles provide the solution. Accept for the sake of argument that the Declaration contains only facts and lay opinion based upon Hersch's personal

---

[1] This would be necessary but not sufficient. Hersch would also have to establish that his opinion was not "based on scientific, technical, or other specialized knowledge[.]" Fed. R. Evid. 701(c).

observations and experience. Those facts and lay opinions should have been disclosed before the close of fact discovery. Fact discovery closed on May 8, 2020, (*see* order dated Mar. 17, 2020), except for the completion of a limited number of depositions. (Order dated Dec. 23, 2020 at 2). The Hersch Declaration, however, is based on a site visit conducted on September 21, 2021 at Defendants' store, *i.e.*, over a year after fact discovery closed and after the close of all discovery. A party cannot sandbag its adversary by submitting new facts in a summary judgment declaration, if those facts should have been disclosed during fact discovery. *See Ebewo v. Martinez*, 309 F. Supp. 2d 600, 608 (S.D.N.Y. 2004) ("The plaintiff knew the evidence he would require in order to prevail on his claim and in order to survive a motion for summary judgment. It was unfair to the defendant for the plaintiff to cobble together the evidence needed to oppose summary judgment only after the date specified by Magistrate Judge Maas for the close of expert discovery, and only after the defendant had submitted his motion for summary judgment.").

When the Defendants belatedly disclosed the Fordyce Memo, the Court chastised them for the late disclosure:

> And examining the document produced by Defendants, about which Fordyce will testify, makes this prejudice apparent. The Fordyce Memo, dated October 27, 2020, lists items that would have to be removed from the sales floor (presumably to make the changes Plaintiff believes are necessary to make the location ADA-compliant). (*See* App. A ("App. A"), attached to Mot., Dkt. No. 62 at 1). Based on Fordyce's view of what would need to be removed, Hersch projects the loss of income and profit to Defendants. (*See* App. A, attached to Mot. for Leave to Electronically File Doc. Under Seal in Connection with Defs.' Mot. for Recons. dated Jan. 6, 2021, Dkt. No. 53, at 1–4). This case was first filed on January 5, 2018, nearly three years before Fordyce's walk-around analysis was prepared. But Defendants have stated from the outset that they believe the changes Plaintiff is demanding are not reasonable and economically infeasible. (*See* Answer dated Apr. 4, 2018, Dkt. No. 9, ¶ 103; Tr. dated Aug. 27, 2018, Dkt. No. 17 at 5:11–6:13; *see also* Tr. dated Apr. 3, 2019, Dkt. No. 22 at 12:07–:20; Tr. dated Nov. 26, 2019,

6

> Dkt. No. 65 at 4:07–:13). For the factual basis for that assertion to be recast after all the fact witnesses had been identified, the other Defendants' witnesses already having already been deposed, during a discovery period that was opened up only for a limited purpose, is sandbagging Plaintiff. To boot, it is an abrupt reversal of course. On November 5, 2018, Defendants stated in a discovery response to Plaintiff that they "have no documents at this time which analyze 'the impact on the defendant from making all the pathways in Rainbow Shops complaint.'" (Defs.' Objs. and Resps. to Pl.'s First Req. for Docs. dated Nov. 5, 2018, attached as Ex. 4 to Pl.'s Mot. to Strike dated Oct. 29, 2020, Dkt. No. 41 at 4 (quoting Plaintiff's discovery request)). The parties proceeded to litigate the case on the basis of this understanding until Fordyce's analysis was conducted and emerged some two years later. As the Court said previously, prejudice from this strategic maneuvering "exists aplenty." (Order at 4).

*Irish*, 2021 WL 1827115, at *4. Yet Defendants did the same thing *again*. The only difference is the name of the witness: Hersch instead of Fordyce. That is, they produced a document that analyzed the financial impact of the case after Plaintiff had already asked for such documents and Defendants produced none; after Plaintiff had litigated the case for years without having to respond to such an analysis; and well after the fact discovery deadline passed. Gamesmanship and sandbagging do not capture the impropriety here.

The prejudice from such behavior is apparent. The Court previously detailed the prejudice to Plaintiff from post-deadline disclosure of lay opinions and new facts. *See id.* Furthermore, Plaintiff's counsel deposed Hersch on February 11, 2021. (Tr. of Virtual Dep. of Rainbow USA, Inc., by a witness Jonathan Hersch dated Feb. 11, 2021 ("Dep."), attached as Ex. 3 to Mot.). And at that deposition, Hersch was asked about his site visits to the store—namely a February 2020 visit. (Dep. at 34:20–:25). There can be no doubt that Hersch's new testimony—in the form a declaration—of a new site visit, that took place a year and a half after the prior one, will prejudice Plaintiff. Hersch was not subject to any questioning about the September 2021 visit; Plaintiff had no

7

opportunity to understand his assumptions, analysis, or the basis of his opinions. Plaintiff only has the stale deposition testimony about a different site visit to counter the evidence Defendants are using to dismiss her claims. And because fact discovery is closed, there is no opportunity to depose Hersch a second time (something which itself would impose additional fees and costs) to obtain discovery about the newly proffered facts. The Hersch Declaration essentially preordains the result on summary judgment: a dismissal of Plaintiff's claims on the basis of unrebutted (and unrebuttable) factual evidence that the proposed disability accommodations are not reasonable (since their effect on revenue is too significant). This is the height of prejudice. *See Codename Enters., Inc. v. Fremantlemedia N. Am., Inc.*, No. 16-CIV-1267, 2018 WL 3407709, at *3 (S.D.N.Y. Jan. 12, 2018) ("Defendant argues that highly probative evidence produced eight months after the close of fact discovery and two months after the exchange of Local Rule 56.1 Statements should be stricken because it deprives Defendant of the ability to investigate or rebut the evidence. The Court agrees. The late production prevents Defendant from inquiring at a deposition or otherwise investigating the evidence.") (citation omitted); *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 308 (S.D.N.Y. 2015) ("[P]rejudice to NameMedia—weighs in favor of preclusion. NameMedia had no opportunity prior to the Motions for Summary Judgment to question Coyne about his assertions of fact in his declaration[.]"). Permitting the Hersch Declaration to be considered at summary judgment under these circumstances—where Defendants failed to disclose it prior to fact discovery being closed—is patently improper and unfair. And there is no substantial justification for the delay (indeed, there is no discussion of the fact discovery deadline in Defendants' papers). The Declaration must, therefore, be stricken. *See, e.g.*, *New World Sols., Inc.*, 150 F. Supp.

8

3d at 308–09; *Erazo v. SCM Grp. N. Am.*, No. 16-CV-2386, 2019 WL 1044365, at *17 (E.D.N.Y. Mar. 5, 2019) (granting motion to strike pursuant to Rule 37(b)(2)(A)(ii) notwithstanding the fact that declaration was only evidence in support of claim, because document sandbagged defendants with new evidence that could and should have been disclosed earlier).[2]

                                        SO ORDERED.

                                        /s/ *Sanket J. Bulsara*  December 14, 2021

                                        SANKET J. BULSARA
                                        United States Magistrate Judge

Brooklyn, New York

---

[2] Though the Court's basis for striking the Declaration is Rule 16 and Rule 37(b)(2), it could just as easily be stricken pursuant to Rule 37(c)(1), which prohibits a party from relying on evidence in support of a motion if that evidence was required to be disclosed under Rule 26(e). *See* Fed. R. Civ. P. 37(c)(1). Rule 26(e) requires a party to timely supplement its discovery responses. *See* Fed. R. Civ. P. 26(e). As discussed, Plaintiff asked for any analyses of the financial impact of making the store's aisles wider. Defendants said there were none, but then a year and a half after discovery closed created and produced such an analysis. Such behavior, which has no justification, and the concomitant prejudice to Plaintiff is sufficient to strike the Declaration pursuant to Rule 37(c)(1). *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (articulating standards for Rule 37(c)(1) sanction as "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.") (quotations omitted).