UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KELLY IRISH,

               Plaintiff,

        -against-

TROPICAL EMERALD LLC AND RAINBOW
USA, INC.,

               Defendants.

Index No. 1:18-cv-00082-PKC-SJB


# DEFENDANTS' MEMORANDUM OF LAW IN
# SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT


LITTLER MENDELSON, P.C.
Eric D. Witkin
Rebecca Goldstein
900 Third Avenue
New York, New York 10022

*Counsel for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

THE MATERIAL FACTS ...................................................................................................... 2

ARGUMENT ...................................................................................................................... 5

    I.      THE SUMMARY JUDGMENT STANDARD ................................................ 5

    II.     THE RELEVANT LEGAL ISSUES ............................................................ 6

         A.    Federal Statutory and Regulatory Framework. ............................... 6

         B.    The Fixed Elements Have Been Remediated ................................... 6

         C.    The Moveable Racks Comply With the Applicable Standards. ...... 8

             1.     The Moveable Clothing Racks Are Not Covered by the ADAAG. ................................................................................... 8

             2.     The ADA Title III Regulations' Barrier Removal Standard Applies to the Moveable Racks........................................... 10

             3.     Plaintiff Failed to Satisfy Her Burden to Prove that Permanently Widening the Aisles to Create 36-inch Wide Aisles Surrounding Each Moveable Rack is "Readily Achievable"................................................................... 12

             4.     Rainbow Has Shown The Adverse Impact of Permanently Removing Enough Moveable Racks to Create 36-inch Wide Aisles Makes This Proposed Modification Not Readily Achievable................................................................... 14

             5.     Rainbow Complies with the ADA Regulations and Makes its Goods Accessible To All Customers Through Alternative Methods................................................................... 16

    III.    THE COURT SHOULD DISMISS THIS ACTION AS MOOT .............................. 18

         A.    The Mootness Standard........................................................... 18

          B.    The Federal Claims Should be Dismissed as Moot....................... 19

    IV.    PLAINTIFF IS NOT ENTITLED TO AN INJUNCTION. ....................................... 20

         A.    Plaintiff Has Not Established Irreparable Harm............................ 21

          B.    Plaintiff Has Failed to Establish a Likelihood of Success on the Merits. ................................................................................. 22

    V.    PLAINTIFF'S REMAINING CLAIMS SHOULD BE DISMISSED ..................... 22

         A.    Plaintiff's Declaratory Judgment Claim Should be Dismissed .................... 22

          B.    This Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiff's State and City Law Claims................................... 23

CONCLUSION .................................................................................................................. 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alford v. City of Cannon Beach*,
   No. CV-00-303 (HU)*, 2002 WL 31439173 (D. Ore. Jan. 15, 2002) ..............................................10, 14

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013).....................................................................................................18

*Am. Ass'n of People with Disabilities v. Harris*,
   647 F.3d 1093 (11th Cir. 2011)...................................................................................11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).....................................................................................................5

*Anderson v. Nat'l Grid, PLC*,
   93 F. Supp. 3d 120 (E.D.N.Y. 2015) ..........................................................................23

*Antolini v. Thurman*,
   No. 19-CV-9674 (JMF) (KNF), 2021 U.S. Dist. LEXIS 135989 (S.D.N.Y. July 21, 2021) .........13, 14

*Bacon v. Walgreen Co.*,
   91 F. Supp. 3d 446 (E.D.N.Y. 2015) ..........................................................................18

*Berberi v. Kerala Corp.*,
   No. 20-CV-60384-MORE, 2020 U.S. Dist. LEXIS 245819 (S.D. Fla. Dec. 31, 2020)........................11

*Borkowski v. Valley Cent. Sch. Dist.*,
   63 F.3d 131 (2d Cir. 1995)..........................................................................................12

*Bragdon v. Abbott*,
   524 U.S. 624 (1998)......................................................................................................7

*Brief v. Albert Einstein College of Medicine*,
   423 F. App'x. 88 (2d Cir. 2011) ..................................................................................18

*Carter v. City of N.Y.*,
   No. 14–CV–7165, 2015 U.S. Dist. LEXIS 174124 (E.D.N.Y. Dec. 11, 2015) ...................................23

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)......................................................................................................5

*Chavez v. 25 Jay St. LLC & N. Henry*,
   No. 20-CV-845 (AMD)(PK), 2021 U.S. Dist. LEXIS 36831 (E.D.N.Y. Feb. 24, 2021) ....................22

*Chevron U.S.A. Inc. v. NRDC*,
   467 U.S. 837 (1984)...................................................................................................7, 9

*Clear Channel Outdoor, Inc. v. City of N.Y.*,
    594 F.3d 94 (2d Cir. 2010)................................................................................................18

*Colo. Cross-Disability Coalition v. Too (Delaware), Inc*,
    344 F. Supp. 2d 707 (D. Colo. 2004)........................................................9, 10, 11, 12, 15, 17

*Compo v. River Real Estate Dev., LLC*,
    No. 8:18-cv-614, 2020 U.S. Dist. LEXIS 195964 (N.D.N.Y. Oct. 22, 2020)................................22, 23

*Drexel Burnham Lambert v. Saxony Heights Realty*,
    777 F. Supp. 228 (S.D.N.Y. 1991)........................................................................................24

*Goldman v. Brooklyn Ctr for Psychotherapy, Inc.*,
    No. 15-CV-2572 (PKC)(PK), 2018 U.S. Dist. LEXIS 61586 (E.D.N.Y. Apr. 11, 2018)....................19

*Hicks v. Baines*,
    593 F.3d 159 (2d Cir. 2010)................................................................................................6

*United States of ex rel. Hilary Best v. Barboarotta*,
    No. 12-CV-6218 (NGG), 2013 U.S. Dist. LEXIS 1510 (E.D.N.Y. Jan. 2, 2013) ............................20

*Hubbard v. 7-Eleven, Inc.*,
    433 F. Supp. 2d 1134 (S.D. Cal. 2006)................................................................................16

*Humphreys v. Cablevision Sys. Corp.*,
    No. 10-cv-4737, 2012 WL 2317337 (E.D.N.Y. June 14, 2012) ............................................6

*Hurley v. Tozzer, Ltd.*,
    No. 15 Civ. 2785 (GBD)(HBP), 2018 U.S. Dist. LEXIS 18808 (S.D.N.Y. Feb. 2, 2018) .......12, 13, 14

*Kamal v. Kohl's Corp.*,
    No. 18-cv-25-jdp, 2019 U.S. Dist. LEXIS 35152 (W.D. WI Mar. 5, 2019).................................21

*Karmel v. Claiborne, Inc.*,
    No. 99 Civ. 3608 (WK), 2002 WL 1561126 (S.D.N.Y. July 15, 2002) .................................24

*Kohler v. Presidio Int'l, Inc.*,
    No. CV 10-4680 PSG PJWX, 2013 WL 1246801 (C.D. Cal. Mar. 25, 2013)................................11

*Kreisler v. Second Ave. Diner Corp.*,
    No. 10 Civ. 7592 (RJS), 2012 U.S. Dist. LEXIS 129298 (S.D.N.Y. Sept. 11, 2012)..............12, 13, 14

*Lieber v. Macy's W., Inc.*,
    80 F. Supp. 2d 1065 (N.D. Cal. 1999) ................................................................9, 10, 11

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    454 F.3d 108 (2d Cir. 2006)................................................................................................20

*Mannick v. Kaiser Found. Health Plan, Inc.*,
    No. C 03-5905 (PJH), 2006 U.S. Dist. LEXIS 57173 (N.D. Cal. July 31, 2006)................................11

*Panzica v. Mas-Maz, Inc.*,
  No. CV 05-2595 (ARL), 2007 U.S. Dist. LEXIS 42171 (E.D.N.Y. June 11, 2007) ...............12, 13, 14

*Parker v. Sony Pictures Entm't, Inc.*,
  260 F.3d 100 (2d Cir. 2001)..................................................................................................................5

*Perdum v. Forest City Ratner Companies*,
  174 F. Supp. 3d 706 (2016) ................................................................................................................23

*Perez v. Beres Bar & Pub, Inc.*,
  No. 16-CV-1729 (ILG), 2016 U.S. Dist. LEXIS 153802 (E.D.N.Y. Nov. 4, 2016)............................12

*Pinnock v. Int'l House of Pancakes Franchisee*,
  844 F. Supp. 574 (S.D. Cal. 1993)......................................................................................................16

*Reyes v. Krasdale Foods, Inc.*,
  No. 12 CV 1595 (VB), 2013 U.S. Dist. LEXIS 73985 (S.D.N.Y. May 22, 2013) ...............................5

*Roberts v. Royal Atl. Corp.*,
  542 F.3d 363 (2d Cir. 2008).................................................................................................................12

*Rogers v. Subotic LLC*,
  No. 18 Civ. 1997, 2018 U.S. Dist. LEXIS 138985 (S.D.N.Y. Aug. 16, 2018)....................................10

*Romano v. SLS Residential, Inc.*,
  246 F.R.D. 432 (S.D.N.Y. 2007) .........................................................................................................21

*Ryan v. Kohl's Corp.*,
  No. 17 CV 5854, 2018 U.S. Dist. LEXIS 165074 (N.D. Ill. Sept. 26, 2018) ................................14, 22

*Scotto v. Almenas*,
  143 F.3d 105 (2d Cir. 1998)...................................................................................................................6

*Software AG, Inc. v. Consist Software Solutions, Inc.*,
  No. 08 Civ. 389 (CM) (FM), 2008 U.S. Dist. LEXIS 19347 (S.D.N.Y. Feb. 21, 2008) ....................20

*Spector v. Norwegian Cruise Line Ltd.*,
  545 U.S. 119 (2005)..............................................................................................................................12

*Sunward Elecs., Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004)....................................................................................................................20

*Thomas v. Kohl's Corporation*,
  No. 17-C-5857, 2018 U.S. Dist. LEXIS 18218 (N.D. Il. Feb. 5, 2018)................................................9

*Thomas v. West*,
  242 F. Supp. 3d 293 (S.D.N.Y. 2017)...............................................................................................7, 19

*Walker v. Time Life Films, Inc.*,
  784 F.2d 44 (2d Cir. 1986)....................................................................................................................24

**Statutes**

28 U.S.C. § 1367(c) ........................................................................................................23

42 U.S.C. § 12181 ...................................................................................................10, 14

42 U.S.C. § 12181(9) ........................................................................................10, 14, 15

42 U.S.C. § 12182(a) ........................................................................................................6

42 U.S.C. § 12182(b)(2)(A)(v) ......................................................................................16

42 U.S.C. § 12183(a)(2) ...................................................................................................7

42 U.S.C. § 12186(b) ........................................................................................................7

42 U.S.C. § 12188(a)(1) .................................................................................................21

ADA ..........................................................................................................................*passim*

H. Rep. 101-485, Part 2; 101st Cong. 2d Sess. 110 (May 15, 1990) ...........................17

**Other Authorities**

28 C.F.R. Part 36 ..........................................................................................................7, 9

28 C.F.R. Part 36, App. A (currently App. D) ("1991 ADA Standards") ........................9

28 C.F.R. Part 36 subpart D ("2010 ADA Standards") ....................................................7

28 C.F.R. Part 36 App. D § 4.1.3(12)(b) (1991) .............................................................9

28 C.F.R. Part 36 App. D § 4.1.6 (1991) .........................................................................7

28 C.F.R. Part 36 App. D § 4.5.2 (1991) .........................................................................7

28 C.F.R. Part 36 App. D § 4.13.6 (1991) .......................................................................7

ADA Title III Technical Assistance Manual § 4.4100 (1993) .......................................10

ADA Title III Technical Assistance Manual § 4.4200 (1993) .......................................11

28 C.F.R. § 36.104 .................................................................................................6, 7, 11

28 C.F.R. § 36.304(b)(4) ...............................................................................................10

28 C.F.R. § 36.304(c)(2) ...............................................................................................10

28 C.F.R. § 36.304(f) ...............................................................................................10, 14

28 C.F.R. § 36.305 ......................................................................................................16, 18

28 C.F.R. § 36.406(b) ........................................................................................................9, 10

56 Fed. Reg. 35408, 35414-15 (July 26, 1991) ...................................................................9

Fed. R. Civ. P. 54(c) .........................................................................................................22

Fed. R. Civ. P. 56 ............................................................................................................2, 5

Department of Justice Advance Notice of Proposed Rulemaking on Equipment and Furniture,
   RIN 1190-AA64 ...........................................................................................................9

Department of Justice Opinion Letter 213 ("Copus Letter") ....................................9, 11, 16, 17

## PRELIMINARY STATEMENT

Defendants Rainbow USA, Inc. ("Rainbow") and Tropical Emerald LLC ("Tropical") (collectively, "Defendants") submit this memorandum of law in support of their motion for summary judgment dismissing Plaintiff's Amended Complaint in its entirety with prejudice.[1]

Plaintiff's Complaint alleges that Rainbow's discount clothing Store at 493 Fulton Street in Brooklyn, New York (the "Store") has various barriers to access that violate the Americans with Disabilities Act ("ADA") and analogous state and local statutes. However, Rainbow has remediated the fixed architectural elements (e.g., the entrance) cited by Plaintiff, making the claims about those elements moot and ripe for dismissal on summary judgment.

The Store's sales floors are filled with moveable racks of merchandise for sale. Plaintiff alleges that, on either side of the main aisles, the side aisles between those movable merchandise racks violate the ADA Standards for Accessible Design ("ADAAG") and the ADA because they are less than 36 inches wide. However, the ADAAG is inapplicable to those moveable racks because they are not fixed, and Rainbow makes merchandise on the racks accessible through alternative methods: it posts signs telling customers to ask staff for assistance. Upon request, staff widen the aisles around the racks allowing customers to travel through the widened aisles.

Plaintiff asserts that Rainbow's display of merchandise on moveable racks separated by narrow aisles violates the ADA, which, Plaintiff argues, requires *fixed* 36-inch wide side aisles, and that Plaintiff and other disabled customers should not have to ask Store staff to assist them by widening the aisles. Plaintiff thus claims that the ADA effectively bars the use of moveable merchandise racks to display the goods for sale in the Store in aisles less than 36 inches wide.

---

[1] Also submitted herewith in support of the motion are the declaration of Eric D. Witkin, Esq. (the "Witkin Dec."), Defendant's Statement of Undisputed Facts (the "Statement"), the declarations of Dominic Marinelli (the "Marinelli Dec.") and Jonathan Hersch (the "Hersch Dec."). Defendant Tropical is the owner of the building located at 493 Fulton Street that houses the Store.

Neither the ADA nor court decisions support this claim. Other authority rejects it.[2] Rainbow's accommodation of disabled customers by widening the aisles on request complies with ADA Title III barrier removal regulations.  Accordingly, that claim also should be dismissed.

Plaintiff's ADA claims should be dismissed with prejudice, and the remaining state and local claims also should be dismissed.

### THE MATERIAL FACTS

Defendants refer to their Statement of Undisputed Material Facts submitted herewith for a complete statement of the undisputed material facts relevant to the instant Motion.

### The Store

Rainbow operates a women's and children's clothing store at 493 Fulton Street in downtown Brooklyn, New York (the "Store"). (DMSF ¶¶ 2, 7).[3] The building located at 493 Fulton Street, Brooklyn, New York 11201 was built in or before 1937 (the "Building"). (*Id.* ¶ 4). No alterations covered by the ADA were made to the Building pursuant to permits sought after the March 15, 2012 effective date of the 2010 ADA Standards.  (*Id.* ¶ 5, n. 10, *infra*).

The public areas of the Store comprise four floors packed with merchandise displayed on moveable merchandise racks (the "Moveable Racks") and on the side walls. (*Id.* ¶¶ 8, 9, 13). There are no back rooms where merchandise can be stored on the sales floors. (*Id.* ¶¶ 9, 10, 34). Three of the Store's four sales floors have closely spaced moveable racks of clothing and other merchandise in order to maximize the amount of inventory on the sales floors. (*Id.* ¶ 9). It is critical to Rainbow's merchandising strategy that it place as much inventory in as many styles as possible on the floors as its average prices are meant to accommodate shoppers with limited means, and the Store has limited backroom storage space.  (*Id.*).

---

[2] *See infra* pp. 7ff.
[3] "DMSF" refers to Defendants' Rule 56.1 Statement of Undisputed Material Facts in support of the instant Motion.

As a result of the need to maximize the amount of merchandise on the sales floor and the absence of stock room space and staff to retrieve merchandise, the space between the Moveable Racks on the side aisles is often less than 36 inches. (*Id.* ¶ 10).  The main aisles in the Store are all accessible. (*Id.* ¶¶ 10, 64).  Some of the Moveable Racks are so close together that they need to be pulled apart for any person, able-bodied or disabled, to fit through.[4] (*Id.* ¶ 11).   As indicated by the signage located along the accessible main aisles on each floor, on request, staff widen the aisles by pulling the racks apart to allow persons in wheelchairs to travel between the racks and between the racks and the side walls.[5] (*Id.* ¶¶ 12, 65).

**Plaintiff's Alleged Visit to the Store and the Amended Complaint**

Plaintiff alleges that she is a wheelchair user who suffers from medical conditions that inhibit her walking and restrict body range and movement. She claims she visited the Store just once to shop for clothing back in 2017. (*Id.* ¶¶ 1, 19).[6]

The Amended Complaint claims the Store was not accessible because its entrance threshold was too steep and/or its level was too high above the sidewalk slope to the threshold. This condition was remediated at the right hand (East) entry door, and signage was posted on the left hand (West) entry door directing customers in wheelchairs to the remediated right-hand door. (*Id.* ¶¶ 30, 36). This issue is now moot. Plaintiff also claimed that the Store exits were not accessible and obstructed by merchandise, which was corrected. (*Id.*).  Thus, that issue also is now moot.

Plaintiff's remaining claim is that the Moveable Racks are too close together, i.e., closer than 36 inches Plaintiff asserts is required by the ADAAG and the ADA. (*Id.* ¶ 37). To address

---

[4] This merchandising system reflects Rainbow's operational strategy.  (*Id.* ¶¶ 9, 11).
[5] The Store also displays merchandise on tall side walls (approximately 10 feet) high. Most customers, disabled and able-bodied, cannot reach this merchandise. On request, store staff regularly retrieve such merchandise.  (*Id.* ¶ 13).
[6] Plaintiff visited the Store in 2017 to browse clothing; she did not purchase anything from the Store, nor has she purchased merchandise from any Rainbow store.  (*Id.* ¶ 20).

this issue, per the applicable ADA Standards and Title III Regulations, Rainbow posted signage throughout the four sales floors notifying customers to ask Store staff for assistance if needed. On such requests, Store staff move the racks widening the aisles to provide enough space in which customers in wheelchairs can propel themselves down the widened aisles and view all merchandise. Store staff, on request, also retrieve merchandise from the racks and from the side walls beyond the reach of customers both in and out of wheelchairs.  (*Id.* ⁋⁋ 47, 49).

**The Experts' Inspections and Reports**

Plaintiff's designated "expert" Jimmy Zuehl issued two reports: his May 25, 2018 report about his May 16, 2018 visit to the Store, and his February 11, 2021 report about his January 22, 2021 visit to the Store.[7] (*Id.* ⁋⁋ 23-26).

Rainbow's expert Dominic Marinelli prepared an October 30, 2020 report rebutting the May 25, 2018 Zuehl Report and a June 11, 2021 report rebutting the February 11, 2021 Zuehl Report (the "Marinelli Reports").[8] Those reports explain the bases for Marinelli's opinion that Zuehl erred in his analysis of alleged accessibility issues existing at the Store.  (*Id.* ⁋ 28).

Marinelli's June 11, 2021 report confirmed that: (1) there is an accessible route down the middle of all four floors of the Store; (2) the Store has one accessible entrance per the ADA; (3) the bevel, slope, and threshold height of that entrance comply with the ADA; (4) compliant signage identifies the accessible entrance door; (5) the exit doors are accessible and not obstructed by merchandise; and (6) there was compliant signage throughout all four floors of the Store informing customers to ask Store staff if they need any assistance.  (*Id.* ⁋ 30).

There is no factual dispute that the purported ADA violations as to fixed elements were

---

[7] Zuehl's February 11, 2021 Report supersedes his May 25, 2018 report.  (*Id.* ⁋ 25).
[8] The June 11, 2021 Marinelli report supersedes the October 30, 2020 report.  (*Id.* ⁋ 29).

remediated. (*Id.* ¶¶ 36, 55).  Marinelli's June 11, 2021 report[9] opines that all ADA issues cited by Plaintiff and Zuehl were remediated. (*Id.* ¶ 35). Plaintiff has not disputed that report.

Thus, it appears that the only remaining dispute is not an issue of fact, but rather, the legal issue of whether the ADA requires Rainbow to maintain permanent fixed 36-inch wide aisles between and around all moveable merchandise racks, thus diminishing the amount of merchandise that can be displayed on its sales floors.

## ARGUMENT

## I.    THE SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment when the undisputed material facts warrant judgment in its favor as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Reyes v. Krasdale Foods, Inc.*, No. 12 CV 1595 (VB), 2013 U.S. Dist. LEXIS 73985, at *10 (S.D.N.Y. May 22, 2013) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)) (summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate "if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.").

The moving party must show "there is an absence of evidence to support the nonmoving party's case," *Celotex*, 477 U.S. at 325, but summary judgment is appropriate if Plaintiff "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* at 323. Thus, a moving defendant "need not prove a negative," but "need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex*, 477 U.S. at 324).

---

[9] The Court extended the expert discovery deadline to June 30, 2021 (ECF No. 68).

To withstand this motion, the plaintiff "must provide more than conclusory allegations []
to defeat a motion for summary judgment." *Humphreys v. Cablevision Sys. Corp.*, No. 10-cv-
4737, 2012 WL 2317337, at *4 (E.D.N.Y. June 14, 2012) (internal citations omitted). "A party
may not rely on mere speculation or conjecture as to the true nature of the facts to overcome
a motion for summary judgment. ... [M]ere conclusory allegations or denials ... cannot by
themselves create a genuine issue of material fact where none would otherwise exist.'"
*Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (internal citations
omitted); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (same).

The undisputed material facts demonstrate that Rainbow remediated all barriers alleged
by Plaintiff and accommodates customers in wheelchairs. As the Store complies with the ADA
and its regulations, Plaintiff's claims are moot and should be dismissed with prejudice.

## II.    THE RELEVANT LEGAL ISSUES

### A.    Federal Statutory and Regulatory Framework.

ADA Title III applies to persons who own, lease or lease to, or operate places of public
accommodation. 42 U.S.C. 12182(a). Public accommodations discriminate against individuals
with disabilities if they fail to remove barriers or make requested reasonable modifications in
order to accommodate an individual's disability, unless barrier removal is not readily achievable
(i.e. the modification would adversely impact the business). 28 C.F.R. § 36.304 (barrier
removal) and 36.302(a) (reasonable modification). If barrier removal is not readily achievable,
and an alternative means is readily achievable, the facility must provide this alternative
method(s). *Id.*

### B.    The Fixed Elements Have Been Remediated.

No alterations covered by the ADA were made to the Building pursuant to permits sought

after the March 15, 2012 effective date of the 2010 Standards, (DMSF ⸿ 5), so the 1991

Standards apply to fixed elements. 28 C.F.R. Part 36 App. D § 4.1.6 (1991) (hereinafter the

"1991 Standards")[10]; 42 U.S.C. § 12183(a)(2); 28 C.F.R. § 36.104 (Department of Justice

("DOJ") Title III Regulations (the "Title III Regulations"));[11] *see Thomas v. West*, 242 F.

Supp.3d 293, 300 (S.D.N.Y. 2017). There is no dispute that Rainbow complies with its

responsibilities under the 1991 Standards as to the Store's entry door, entry threshold, exterior

slope, and emergency exits (hereinafter the "Fixed Elements").   (DSMF ⸿⸿ 14, 16-18, 30, 36,

55); Witkin Dec. ⸿ 5 (Plaintiff did not contradict Marinelli's June 11, 2021 report).[12]

    Here, the Store's Fixed Elements are accessible as the following 1991 Standards require:

- Public Entrances: 50% of entrances must be accessible so long as appropriate signage is installed indicating the location of the nearest accessible entrance at or near the inaccessible entrance. 1991 Standards §4.1.6(h).
- Exterior Threshold at the Accessible Entrance: Must not exceed ½ an inch and provides less than 1:2 bevel. 1991 Standards §4.5.2.   The Store's threshold is no more than ½ an inch and provides a bevel of less than 1:2.
- Slope at Accessible Entrance: Changes in level up to ¼ inches may be vertical and without edge treatment; changes in level between ¼ inches and ½ inches shall be beveled with a slope no greater than 1:2. The running slope at the accessible entrance is 1.5% and the cross slope is 1.2%. 1991 Standards, §4.13.6.
- Exits are not obstructed by merchandise. 1991 Standards, "Definitions", § 4.1.6.

    As Rainbow's June 11, 2021 expert's report states, as of February 26, 2021: (1) the Store

has one accessible entrance per the ADA; (2) the threshold at the accessible entrance with

---

[10] The 1991 ADA Standards (or "ADAAG") and 2010 Standards for Accessible Design will be referred to as the "1991 Standards" and the "2010 Standards", respectively. The term "1991 Standards" refers to the ADA Standards for Accessible Design, originally published on July 26, 1991 as Appendix A to 28 C.F.R. part 36, and republished as Appendix D to 28 C.F.R. part 36. The term "2010 Standards" refers to the 2010 ADA Standards for Accessible Design, which consist of the 2004 ADAAG and the requirements contained in subpart D of 28 C.F.R. part 36, and were published on September 15, 2010. The 1991 ADA Standards can be found at: https://www.ada.gov/1991standards/1991standards-archive.html. (DSMF ⸿ 6). The 2010 ADA Standards can be found at: https://www.ada.gov/regs2010/2010ADAStandards/2010ADAstandards.htm. (*Id.*). The DOJ Regulations incorporate the 1991 Standards. See 28 C.F.R. part 36 App. D.

[11] Pursuant to statute, DOJ issues regulations implementing Title III and the ADA. *See* 42 U.S.C. § 12186(b). The Courts defer to these regulations to the extent they are reasonable constructions of the ADA. *See Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 843-45 (1984); *see also Bragdon v. Abbott*, 524 U.S. 624, 646 (1998).

[12] Zuehl did not opine on which ADA standard applies, (DSMF ⸿⸿ 53, 54, 58), as he was not asked by Plaintiff to do so, (*id.* ⸿⸿ 52, 54). He also affirmed that his reports address all issues that might not be in compliance at the Store as of the date of his inspections. (*Id.* ⸿ 53).

respect to the bevel, slope, and threshold height comply with the ADA; (3) compliant signage identifies the accessible right entrance door; and (4) the exit doors are accessible and not obstructed by merchandise. (DSMF ¶ 36). Plaintiff does not dispute these facts. Further, although Zuehl's last inspection and reports were January 22 and February 11, 2021, (*id.* ¶ 25), he admitted during his February 23, 2021 deposition:

- After his January 22 reinspection, Zuehl was sent photographs taken by Defendants' expert Marinelli, which photographs indicated that the threshold at the compliant entrance had been corrected. (*Id.* ¶ 55).
- After his January 22, 2021 reinspection, Zuehl was sent photographs by Marinelli, which photographs appear to show that the exits were not blocked by merchandise. (*Id.* ¶¶ 36, 51, 55).
- The 1991 Standards[13] only require one accessible door at the Store, as only 50% of entrances must be accessible. (*Id.* ¶ 55). Assuming the 1991 Standards apply here, Zuehl admitted that if the threshold on the accessible door was fixed, and Rainbow installed signage on the non-accessible door indicating the accessible door was on the other side and was accessible, this would be correct and compliant. (*Id.*).

Plaintiff does not dispute that Fixed Elements accessibility issues have been remediated and comply with the 1991 Standards. When asked whether the barrier removal standard applies to the Store, Zuehl testified that he was not charged with determining which standard is applicable, and that he analyzed the Store under the ADA's "new construction" standards, but concedes that he does not have an opinion as to whether these standards are applicable. (DSMF ¶ 58). Therefore, it is undisputed that the Fixed Elements comply with the 1991 Standards, and Plaintiff's claims should be dismissed as moot.

### C. The Moveable Racks Comply With the Applicable Standards.

#### 1. The Moveable Clothing Racks Are Not Covered by the ADAAG.

Plaintiff incorrectly claims that the side aisles between Rainbow's movable merchandise racks (the "Movable Racks") violate the ADAAG and the ADA because they are too close

---

[13] Zuehl does not concede that the 1991 Standards apply, but does not dispute they apply, as he was not asked in the scope of his work to opine on which ADA standards (1991 or 2010) apply to the Store. (*Id.* ¶ 54).

together. The ADAAG is inapplicable to the Moveable Racks, and as we explain below, Rainbow moves the racks upon request to provide all customers access to the merchandise.

The ADAAG standards are inapplicable to the Moveable Racks because the racks are not fixed. 28 C.F.R. § 36.406(b) ("[t]he 1991 [and] 2010 Standards apply to **fixed** or **built-in** elements of buildings . . . ."). (emphasis added); *Colo. Cross-Disability Coalition v. Too, (Delaware), Inc*, 344 F. Supp. 2d 707, 712 (D. Colo. 2004); *Lieber v. Macy's W., Inc.*, 80 F. Supp. 2d 1065, 1077 (N.D. Cal. 1999); *Thomas v. Kohl's Corporation*, No. 17-C-5857, 2018 U.S. Dist. LEXIS 18218, at *8 (N.D. Il. Feb. 5, 2018) (the ADA and its regulations contain no requirement for moveable racks because the "regulatory spacing requirement for self-service merchandise units" only "applies to fixed display units"); *see also* 1991 Standards § 4.1.3(12)(b) (**fixed** "shelves or display units allowing self-service by customers in mercantile occupancies shall be located on an accessible route        ") (emphasis added); DOJ opinion letter (the "Copus letter")[14]; DOJ Advance Notice of Proposed Rulemaking on Equipment and Furniture, RIN 1190-AA64 (since withdrawn) (the 1991 Standards do not govern the accessibility of non-fixed furniture or equipment (*citing* 28 C.F.R. Part 36, App. A (republished as App. D to 28 C.F.R. Part 36))); (DSMF ⫝̸ 38).[15]

Plaintiff did not produce a report disputing this analysis. (Witkin Dec. ⫝̸ 5). Zuehl agrees that moveable items are not explicitly covered in the ADA Standards (DSMF ⫝̸ 39). As the

---

[14] A copy of the Copus Letter is attached to the Witkin Dec. as Ex. C. Courts give the DOJ letter and the Manual some deference to the extent they are persuasive.   *Colo. Cross-Disability Coalition*, 244 F. Supp. 2d at 714; *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984); *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 257 (1991) (the level of deference "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade ").
[15] The Architectural and Transportation Barriers Compliance Board that drafted the ADAAG, stated in the preamble that "these guidelines are intended to address only that equipment that is fixed or built into the structure of the building." 56 Fed. Reg. 35408, 35414-15 (July 26, 1991).

ADAAG applies only to fixed items, ADA's Title III Regulations supply the applicable rules.[16]

### 2. The ADA Title III Regulations' Barrier Removal Standard Applies to the Moveable Racks.

Discrimination under ADA Title III includes a failure to remove barriers to accessibility, "where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(c)(2); 28 C.F.R. § 36.304(b)(4) (2003) (the "rearrangement . . . of display racks" as an accommodation that might be "readily achievable"); ADA Title III Technical Assistance Manual §4.4100 (1993); *Rogers v. Subotic LLC*, No. 18 Civ. 1997, 2018 U.S. Dist. LEXIS 138985, at *1 (S.D.N.Y. Aug. 16, 2018). Even Zuehl agrees that the ADA contemplates the likelihood that the removal of *all* barriers will not be "readily achievable." (DSMF ¶ 42).

The "DOJ regulations explain that 'the rearrangement of temporary or movable structures, such as furniture, equipment or display racks is not readily achievable to the extent that it results in a significant loss of selling or serving space.'" *See* 28 C.F.R. § 36.304(f); *Lieber*, 80 F. Supp. 2d at 1078; *Colo. Cross-Disability Coalition,* 344 F. Supp. 2d 707; *Alford v. City of Cannon Beach,* No. CV-00-303 (HU)*,* 2002 WL 31439173 (D. Ore. Jan. 15, 2002); *see* 42 U.S.C. § 12181(9) (listing factors to be considered).[17] The DOJ looks at factors, including the difficulty of removing barriers and the extent to which the removal may impact business operations to determine if the removal is readily achievable.  See DOJ ADA Title III

---

[16] Although the 2010 Standards do not apply to the Store since alterations were completed before the 2012 trigger date for the 2010 Standards, similar to the 1991 Standards, these standards apply only to fixed and built-in elements, so are inapplicable to the Moveable Racks. 28 C.F.R. § 36.406(b) ("[t]he 1991 Standards and 2010 Standards apply to fixed or built-in elements of buildings, structures, site improvement ")

[17] Courts have interpreted the legislative history of 42 U.S.C. § 12181 to find that moveable racks are governed by the "readily achievable" standard. *Colo. Cross-Disability Coalition,* 344 F. Supp. at 12); *Morse v. Republican Party*, 517 U.S. 186, 209 (1996) (rejecting proffered statutory construction because it would "defeat the purpose for which the House and eventually Congress as a whole adopted" the pertinent statute); *United States v. Forbes*, 806 F. Supp. 232, 235 (D. Colo. 1992) ("[a] statute must be construed to avoid unintended or absurd results.").

Technical Assistance Manual §4.4200; (DSMF ⁋ 43).[18]

The Moveable Racks are governed by the ADA's readily achievable barrier removal standard. ADA Title III Regulations, Preamble (provides the readily achievable barrier removal standard applies to display racks); 28 C.F.R. § 36.304 (requires the removal, when readily achievable, of barriers including display racks); *see also Lieber*, 80 F. Supp. 2d at 1077 (moveable displays are governed by the ADA's "readily achievable" standard); *Kohler v. Presidio Int'l, Inc.,* No. CV 10-4680 PSG PJWX, 2013 WL 1246801, at *13 (C.D. Cal. Mar. 25, 2013), *vacated in part on other grounds*, 782 F.3d 1064 (9th Cir. 2015)); Copus Letter (concluding that the barrier removal standard set forth in the ADA Title III regulations applies to display racks); (DSMF ⁋ 40).

Zuehl admits that: (1) if the facility was in existence prior to January 26, 1992, its responsibility is to remove barriers that are readily achievable; (2) the barrier removal standards follow the readily achievable standard; (3) if this case involved barrier removal, then the alternatives to barrier removal standard applies; (4) if they are in a building in existence prior to 1991 then their obligation is to remove barriers that are readily achievable; and barrier removal applies to existing entities that are not doing alterations after the fact.[19] (*Id.* ⁋ 41). As stated in *Lieber,* 80 F. Supp. 2d at 1077, "[t]he explicit language of the ADA, [DOJ] ADA regulations, and the legislative history [] indicate that the statute does not contemplate that customers in wheelchairs will have 100% physical access to merchandise "

Unlike the defendant in *Lieber,* Rainbow provides access to all of its merchandise

---

[18] The DOJ Technical Assistance Manual provides guidelines to assist public accommodations in making their facilities accessible. *See Mannick v. Kaiser Found. Health Plan, Inc.*, No. C 03-5905 (PJH), 2006 U.S. Dist. LEXIS 57173 (N.D. Cal. July 31, 2006); *Berberi v. Kerala Corp.*, Case No. 20-CV-60384-MORE, 2020 U.S. Dist. LEXIS 245819 (S.D. Fla. Dec. 31, 2020) (the Manual notes that "determinations as to which barriers can be removed without much difficulty or expense must be made on a case-by-case basis.").

[19] Moveable racks are not built-in or fixed parts of the facility, and therefore are not subject to the ADA's stricter compliance rules applicable to new construction. *Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1106 (11th Cir. 2011); *Colo. Cross-Disability Coalition*, 344 F. Supp. 2d at 714-15.

through alternative methods, thereby eliminating the Moveable Racks as potential barriers, and is therefore compliant with the readily achievable barrier removal standard of the ADA. Similar to *Colorado Cross-Disability Coalition*, where the Court granted the defendants' summary judgment motion, Rainbow has properly provided access to its merchandise through alternative methods, as customers may request help moving the moveable racks.  344 F. Supp. 2d at 715.

> **3.    Plaintiff Failed to Satisfy Her Burden to Prove that Permanently Widening the Aisles to Create 36-inch Wide Aisles Surrounding Each Moveable Rack is "Readily Achievable".**

An ADA Plaintiff "bears the initial burden of showing the removal of an architectural barrier is readily achievable." *Hurley v. Tozzer, Ltd.*, No. 15 Civ. 2785 (GBD)(HBP), 2018 U.S. Dist. LEXIS 18808, at *18 (S.D.N.Y. Feb. 2, 2018) (*citing Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 372 (2d Cir. 2008)); *Perez v. Beres Bar & Pub, Inc.*, No. 16-CV-1729 (ILG), 2016 U.S. Dist. LEXIS 153802, at *6 (E.D.N.Y. Nov. 4, 2016) (same). To make such a showing, a plaintiff must "articulate a plausible proposal for barrier removal, 'the costs of which, facially, do not clearly exceed its benefits.'" *Roberts*, 542 F.3d at 373 (*quoting Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)).

A plaintiff must "proffer evidence, including expert testimony, as to the ease and inexpensiveness of their proposed method of barrier removal." *Panzica v. Mas-Maz, Inc.*, No. CV 05-2595 (ARL), 2007 U.S. Dist. LEXIS 42171, at *5 (E.D.N.Y. June 11, 2007) (internal citations omitted); *Kreisler v. Second Ave. Diner Corp.*, No. 10 Civ. 7592 (RJS), 2012 U.S. Dist. LEXIS 129298, at *21 (S.D.N.Y. Sept. 11, 2012) (plaintiff must provide a cost estimate), *aff'd on other grounds*, 731 F.3d 184 (2d Cir. 2013). This evidence must include analyses of the feasibility of the proposed modifications. *Panzica,* 2007 U.S. Dist. LEXIS 42171 at *28; *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 135 (2005) (considerations extend to more

than just cost); *Hurley*, 2018 U.S. Dist. LEXIS 18808 at *18 (internal citations omitted) ("Plaintiff's [] proposals and cost estimates need not be 'exact or detailed,' but, must, at a minimum, include a [] proposal and 'at least some estimate of costs.').

If a plaintiff meets this standard, "the burden shifts to the defendant to establish that the costs of a plaintiff's proposal would in fact exceed the benefits." *Kreisler v. Second Ave. Diner Corp.*, 2012 U.S. Dist. LEXIS 129298, at *20 (citations and internal quotation marks omitted). Plaintiff proffered no evidence to satisfy her burden to show that permanent widening of the side aisles is readily achievable.

Summary judgment is appropriate where a plaintiff fails to offer evidence demonstrating that compliance is readily achievable. *Panzica*, 2007 U.S. Dist. LEXIS 42171 at *9 (summary judgment for defendants where plaintiff provided no analysis of the feasibility of the suggested modifications); *Hurley*, 2018 U.S. Dist. LEXIS 18808, at *19-*22 (summary judgment granted where plaintiff's expert report contained no cost analysis for the proposed modifications); *Antolini v. Thurman*, No. 19-CV-9674 (JMF) (KNF), 2021 U.S. Dist. LEXIS 135989, at *11-*12 (S.D.N.Y. July 21, 2021) (summary judgment for defendant when plaintiff failed to provide sufficient information about whether the proposed modifications were readily achievable).

Here, to support her claim that the aisles between the Moveable Racks should be widened Plaintiff has submitted only Zuehl's report, which proposes only that Rainbow "[r]earrange the merchandise display racks so that accessible routes are provided within the sales floor areas." (DSMF ⁋ 27). But Rainbow already does this on request. To the extent Plaintiff claims that the merchandise display racks must be removed so that there are *permanent* 36 inch wide aisles surrounding each Moveable Rack,[20] this claim alone, without any cost analysis, expert testimony

---

[20] There is no dispute that compliant accessible routes exist down the middle of each of the four floors of the Store. (DSMF ⁋⁋ 30, 64, 65).

13

about its financial impact or any explanation as to how this is readily achievable, is insufficient to prove a prima facie case. *See Panzica*, 2007 U.S. Dist. LEXIS 42171 at *9; *Hurley*, 2018 U.S. Dist. LEXIS 18808, at *19-*22; *Antolini*, 2021 U.S. Dist. LEXIS at *11-*12. Plaintiff failed to meet her prima facie burden.

In fact, Zuehl testified that he was **not** asked to provide cost estimates for his recommendations, (DSMF ⁋ 56) (emphasis added), and is not opining on whether Rainbow can rearrange or would have to remove some of the Movable Racks, (*id.* ⁋ 57).   Similar to the plaintiff in *Kreisler*, who claimed that the aisles were not compliant but did not provide any cost estimate or proposal for widening the aisles, *Kreisler*, 2012 U.S. Dist. LEXIS 129298 at *30-31, Plaintiff has not met her burden to prove a prima facie case that permanently widening the aisles is readily achievable. Thus, her claim with respect to the Moveable Racks should be dismissed.

> **4.** **Rainbow Has Shown The Adverse Impact of Permanently Removing Enough Moveable Racks to Create 36-inch Wide Aisles Makes This Proposed Modification Not Readily Achievable.**

Even if, *arguendo,* Plaintiff had satisfied her burden to prove a prima facie case that permanently widening all side aisles is readily achievable, Plaintiff proffered no evidence to rebut the fact that permanently removing inventory would have a significant negative impact on the Store's sales revenue.

The *permanent* removal of "temporary or movable structures, such as furniture, equipment, and display racks" is not readily achievable if it "results in a significant loss of selling or serving space." 28 C.F.R. § 36.304(f); *Ryan v. Kohl's Corp.*, No. 17 CV 5854, 2018 U.S. Dist. LEXIS 165074, at *11 (N.D. Ill. Sept. 26, 2018) (same); ADA ⁋ 301(9), 42 U.S.C. § 12181. The "significant loss of selling space" standard requires a look at whether the act will adversely impact operations.  42 U.S.C. § 12181(9), ("Definitions"); *Alford,* 2002 WL 31439173

at *10 (defendant not required to make modifications that would result in "a significant loss of retail space that would adversely impact [defendant's] business operations by decreasing its inventory,"); *Colo. Cross-Disability Coalition,* 344 F. Supp. 2d at 715 (granting summary judgment for defendant).[21]

It is self-evident that permanently widening all side aisles surrounding the Moveable Racks to 36 inches would require Rainbow to remove merchandise racks. The obvious result would be a reduction of the merchandise for sale and the revenue from the sale of that merchandise. The ADA does not require this. Instead, it sets forth the following factors, among others, in deciding whether an action is to be considered readily achievable: (i) the nature and cost of the action; (ii) the overall financial resources of the facility involved and the effect on expenses and resources, *or the impact otherwise of such action upon the operation of the facility*; (iii) the overall financial resources of the covered entity, including the number of its employees; and (iv) *the type of operation of the covered entity*. 42 U.S.C. § 12181(9) (emphasis added).

It is self-evident that if racks were permanently removed, Rainbow would lose selling space and merchandise, adversely impacting the business. Further, Rainbow's model requires that all merchandise be displayed at all times in the Store, and the Store does not have merchandise back rooms on the sales floors. (DSMF ¶¶ 8-11). The Store is not set up to store merchandise off the sales floors.  (*Id.* ¶¶ 8-10).

Rainbow has shown it is not readily achievable to permanently remove the Moveable Racks, because doing so would adversely impact its Store business model. Plaintiff's claims should therefore be dismissed.

---

[21] In *Colo. Cross-Disability Coalition*, the court rejected the plaintiffs' argument that they are entitled to a shopping experience identical to that of able-bodied customers regardless of cost citing Congress' reasoning to include that the readily achievable standards applies to moveable displays.  344 F. Supp. 2d at 714.

### 5. Rainbow Complies with the ADA Regulations and Makes its Goods Accessible To All Customers Through Alternative Methods.

When a public accommodation can demonstrate that the removal of barriers is not readily achievable, the goods and services must be made available through alternative methods, if such methods are readily achievable.  42 U.S.C. § 12182(b)(2)(A)(v) (1994).  Rainbow does this.

Section 36.305(b)(2) explicitly provides that an alternative to barrier removal is "[r]etrieving merchandise from inaccessible shelves or racks". 28 C.F.R. § 36.305(b); Copus Letter ("[a]cccess to goods and services provided in any remaining inaccessible areas must be made available through alternative methods to barrier removal, as required by Sec.36.305"). Further, the DOJ ADA Title III Technical Assistance Manual, III-4.5100 provides the following example:

> ILLUSTRATION 1: A retail store determines that it is not readily achievable to rearrange display racks to make every aisle accessible. However, the store is still required to make the goods and services that are located along inaccessible aisles available to individuals with disabilities through alternative methods. For example, the store could instruct a clerk to retrieve inaccessible merchandise, if it is readily achievable to do so.

(DSMF ¶ 45). These are the actions taken by Rainbow to ensure all customers have access to the merchandise.

Assisting disabled customers and installing ADA-compliant signage stating that customers can ask associates for assistance constitutes a reasonable alternative method under the ADA to make goods available. *See Hubbard v. 7-Eleven, Inc.*, 433 F. Supp. 2d 1134, 1148 (S.D. Cal. 2006); *Adelman v. Acme Markets Corp.*, No. 95-4037, 1996 U.S. Dist. LEXIS 4152, at *3 & n.2 (E.D. Pa. Apr. 2, 1996) ("retrieving an item from a shelf may be a 'reasonable modification'"); *Pinnock v. Int'l House of Pancakes Franchisee*, 844 F. Supp. 574, 582 (S.D. Cal. 1993) (retrieving items from inaccessible shelves is an alternative that is readily

achievable).

The Copus Letter explicitly states that "[i]t is sufficient if a customer who uses a wheelchair is able to determine . . . that the store offers [] black leather jackets. Once that is determined, the customer can rely upon a salesperson to retrieve a black leather jacket in the customer's size."   Copus Letter (*citing* H.Rep. 101-485, Part 2; 101ˢᵗ Cong. 2d Sess. 110 (May 15, 1990)) (Witkin Dec. Ex. C). Zuehl agrees that a store does not need to make every aisle or piece of merchandise accessible, but rather, it is appropriate to have a policy where, upon request, staff assists with retrieving an item. (DSMF ⁋ 61).[22]

Here, Rainbow makes its goods available to all patrons, including disabled patrons by: (1) posting signage bearing the International Symbol of Accessibility on the accessible aisles on each retail floor notifying customers to ask store staff for assistance in obtaining merchandise;[23] (2) having its staff widen the side aisles between the Moveable Racks by pulling the racks apart or away from the walls to allow any wheelchair-bound customer to travel between the racks, and (3) having its staff retrieve merchandise when requested.  (*Id.* ⁋⁋ 30, 47, 64, 65).

When asked about the situation where Rainbow employees are ready and willing to pull apart the moveable racks on request and Rainbow has signage explaining this, even Zuehl stated, "you're describing [] a situation that, in some cases, can be acceptable." (*Id.* ⁋ 59).[24] In fact, Zuehl stated that if this case involved barrier removal, he would agree that having signage directing patrons in wheelchairs to ask for assistance as well as a policy that requires staff pull

---

[22] Further, Zuehl admits that installing signage instructing a customer to ask for assistance is appropriate. (*Id.* ⁋ 62).

[23] Any customer will be provided with assistance in retrieving merchandise when requested, not just the disabled, so disabled customers are treated no differently from other Rainbow customers.  In fact, some of the merchandise is located on high walls, which Zuehl agrees is permissible, and the sales associates retrieve these out-of-reach items for both disabled and able-bodied customers. (*Id.* ⁋ 49).

[24] Zuehl was not asked to opine on which ADA Standards apply, so he cannot confirm this Store is compliant, (*id.* ⁋⁋ 53, 54), but he concedes that if the 1991 Standards apply, this sort of accommodation can be compliant, (*id.* ⁋ 59).

apart the racks on command is compliant. (*Id.* ¶ 60).[25] Therefore, Rainbow complies with the ADA in the manner set forth in the III-4.5100 of the DOJ Manual by having signage indicating associates will accommodate customers with disabilities, and by pulling apart the Movable Racks and/or retrieving merchandise upon request. See 28 C.F.R. § 36.305. Thus, Plaintiff's ADA claims based on the racks should be dismissed.

## III.   THE COURT SHOULD DISMISS THIS ACTION AS MOOT.

### A.   The Mootness Standard.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for Article III purposes—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). An "actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Id.* at 90-91 (quotations and citations omitted). As a result, if the underlying dispute in a lawsuit is no longer "live[,]" the case is moot, and the court no longer has authority to adjudicate the case. *Id.* at 91.

Because ADA Title III allows only for injunctive relief, an ADA claim can become moot if a defendant remedies the barrier to access during the pendency of the litigation. *Bacon v. Walgreen Co.*, 91 F. Supp. 3d 446, 451 (E.D.N.Y. 2015) (*citing Brief v. Albert Einstein College of Medicine*, 423 F. App'x. 88, 90 (2d Cir. 2011)). To establish mootness by voluntary cessation, the defendant must demonstrate that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Clear Channel Outdoor, Inc. v. City of N.Y.*, 594

---

[25] Although Zuehl does not admit that this case involves barrier removal, he does not dispute it. (*Id.* ¶ 54). Asked whether the barrier removal standard applies to the Store, Zuehl testified that he was not charged with determining which standard is applicable, and in fact, that he analyzed the Store under the "new construction" standards of the ADA, but concedes he does not have an opinion as to whether these standards are applicable to the Store. (*Id.* ¶ 58).

F.3d 94, 110 (2d Cir. 2010); *Goldman v. Brooklyn Ctr for Psychotherapy, Inc.*, No. 15-CV-2572 (PKC)(PK), 2018 U.S. Dist. LEXIS 61586, at *5 (E.D.N.Y. Apr. 11, 2018).

**B.    The Federal Claims Should be Dismissed as Moot.**

Here, Plaintiff cannot show any genuine issues of material fact support her request for an injunction. All accessibility issues have been addressed, there remains no federal case or controversy, and the Court should dismiss Plaintiff's Federal claims as moot. *Thomas v. West*, 242 F. Supp. 3d 293, 305 (S.D.N.Y. 2017) (internal citations omitted).

Rainbow remediated the accessibility issues with the Fixed Elements. It remediated the concrete slope and threshold of the Store's right-hand front entry door, installed signage indicating directing persons to that accessible door, ensured all exits are accessible and not blocked by merchandise, and posted signs providing direction to the accessible entrance door and indicating that Store staff will assist customers upon request.  See Section II(B).

As to the Moveable Racks, unlike the defendant in *Goldman*, Rainbow ensures that all merchandise is made accessible to all customers, including the disabled, which are explained in the signage located throughout the Store. (DSMF ¶¶ 12, 16, 30, 32, 47). Further, there is no expectation that the merchandise would not be accessible in the future. In fact, Marinelli's February 26, 2021 visit to the Store confirmed that Rainbow's policies reflected in the signage requires store staff to pull apart the Moveable Racks on request, and to assist customers (both able-bodied and disabled) to retrieve merchandise that may be out of reach. (DSMF ¶ 30); *compare Thomas v. West*, 242 F. Supp.3d 293 (S.D.N.Y. 2017) (numerous violations of the unwritten policy).

That Movable Racks can be moved does not preclude claims about them from being moot. Even if it was readily achievable for Rainbow to permanently remove the racks and

merchandise from the sales floors to create 36-inch wide aisles, there is no guarantee that the remaining moveable racks would not accidentally get moved by a customer,[26] thereby temporarily decreasing an aisle's width to less than 36 inches. If Plaintiff's claim with respect to the Moveable Racks is not moot, it should be dismissed outright for the reasons stated above. Otherwise, having any moveable display or rack in a retail store would subject the store to suit. The ADA and its regulations do not ban moveable racks.

Since the alleged ADA violations here have been remedied, and Rainbow has ensured all customers have access to the merchandise, Plaintiff cannot establish a substantial likelihood of success on her injunctive relief claims, which should be dismissed.

## IV.   PLAINTIFF IS NOT ENTITLED TO AN INJUNCTION.

To obtain a mandatory permanent injunction, a party must prove: (1) irreparable harm; and (2) success on the merits. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 392 (1981); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc*., 596 F.2d 70, 72 (2d Cir. 1979). "Plaintiffs . . . bear the burden of establishing irreparable injury, and the court should consider and balance all the equities and interests presented for its determination." *Town of Huntington v. Marsh*, 884 F.2d 648, 654 (2d Cir. 1989) (citations omitted).[27] Because Plaintiff has not established irreparable harm, nor likelihood of success on the merits, her claim for injunctive relief should be dismissed.

---

[26] In fact, Plaintiff testified that during her sole visit to the store in 2017, the only floor she traveled to where the aisles were too close together for her to travel between was the ground floor, and that she had no accessibility issues on the main floor. (*Id.* ¶ 21). In contrast, Zuehl's report indicates that he found some aisles (excluding the main aisles) were less than 36 inches on the ground floor, second floor, third floor, and fourth floor during his January 2021 visit. (*Id.* ¶¶ 24, 64). This is evidence that (1) these racks are moved, whether by customers or staff, making it impossible to ensure that there is always adequate clearance between each aisle, and that (2) Rainbow's alternative methods (separating the racks on request) here moot Plaintiff's claims.

[27] To "obtain mandatory injunctive relief, the party seeking the injunction must satisfy a higher burden than is necessary to obtain a preliminary injunction. A preliminary injunction is prohibitory . . . whereas a mandatory injunction compels an affirmative act or mandates a course of conduct." *Software AG, Inc. v. Consist Software Solutions, Inc.*, No. 08 Civ. 389 (CM) (FM), 2008 U.S. Dist. LEXIS 19347, at *57 (S.D.N.Y. Feb. 21, 2008); *see Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006) (citations omitted); *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004); *United States of ex rel. Hilary Best v. Barboarotta*, No. 12-CV-6218 (NGG), 2013 U.S. Dist. LEXIS 1510, at *3-*4 (E.D.N.Y. Jan. 2, 2013).

## A.      Plaintiff Has Not Established Irreparable Harm.

To prove irreparable harm, a plaintiff must show "a real or immediate threat that the plaintiff will be wronged again." *Schroedel v. New York Univ. Med. Ctr.,* 885 F. Supp. 594, 598 (S.D.N.Y. 1995) (citations omitted). "While past wrongs consist of evidence bearing on whether there is a real and immediate threat of repeated injury, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* (internal citations omitted); *see also Romano v. SLS Residential, Inc.,* 246 F.R.D. 432, 439 (S.D.N.Y. 2007).  To obtain injunctive relief under Title III, the plaintiff must show that she "is being subjected to discrimination on the basis of disability . . . or . . . has reasonable grounds for believing that [she] is about to be subjected to discrimination." 42 U.S.C. § 12188(a)(1); *Kamal v. Kohl's Corp.*, No. 18-cv-25-jdp, 2019 U.S. Dist. LEXIS 35152 at *7 fn 3 (W. D. WI Mar. 5, 2019) (noting that the plaintiff has not proven that she continues to shop at the retail store at issue).

Plaintiff admitted at her September 3, 2020 deposition she visited the Store just once in 2017 and had not returned. (DSMF ⁋ 19). She testified that she visited the Store in 2017 to browse clothing, did not purchase anything, and has never purchased anything from any Rainbow store. (*Id.* ⁋ 20). Plaintiff proffered no evidence of an immediate threat that she will be harmed, in part because she has not established that she intends to visit this Store again. *See Schrodel,* 885 F. Supp. at 598; *Romano,* 246 F.R.D. at 439-440.  Any potential harm to Plaintiff is entirely speculative, and unlikely, which fails to meet the standard to establish entitlement to an injunction. *See id.* (dismissing plaintiff's Title III ADA claims); *Schroedel,* 885 F. Supp. at 598-99.  Plaintiff's injunctive relief claim should be dismissed.

### B.      Plaintiff Has Failed to Establish a Likelihood of Success on the Merits.

"[T]he purpose of an injunction is to ensure that the defendant comes into compliance with the law, not the plaintiff's specific proposal." *Ryan,* 2018 U.S. DIST. LEXIS 165074, at *15 (injunction denied although court determined it was readily achievable for Kohl's to rearrange the moveable racks given Kohl's own internal guidelines established required spacing between racks) (*citing* Fed. R. Civ. P. 54(c)).  To obtain an injunction, an ADA plaintiff must first establish an ADA violation, i.e., she must prove success of her ADA claim on the merits. *Chavez v. 25 Jay St. LLC & N. Henry*, No. 20-CV-845 (AMD)(PK), 2021 U.S. Dist. LEXIS 36831, at *15-*16 (E.D.N.Y. Feb. 24, 2021).  Here, Plaintiff fails to establish such a violation.

Plaintiff seeks an affirmative injunction requiring relief beyond what the statute provides. It is undisputed that the Fixed Elements have been remediated. Plaintiff fails to meet her burden to prove that permanently removing the Moveable Racks is readily achievable, and Rainbow demonstrates that it is not readily achievable as this would have a significant negative impact on its business and operations. Moreover, per the applicable Alternatives to Barrier Removal standard, Rainbow accommodates disabled customers. On the undisputed facts here, there is no violation of the applicable statutes. All customers have access to the merchandise for sale at this Store.[28] Plaintiff has failed to prove that the Store does not comply with the ADA, thereby precluding an injunction and warranting dismissal of her claim for that relief.

## V.      PLAINTIFF'S REMAINING CLAIMS SHOULD BE DISMISSED.

### A.      Plaintiff's Declaratory Judgment Claim Should be Dismissed.

As Plaintiff's claim for injunctive relief under the ADA is moot and should be dismissed, her ADA claim for declaratory relief also should be dismissed. *Compo v. River Real Estate*

---

[28] Some merchandise at the Store is located on walls so high that no customer, disabled or not, can reach it.  Similar to their policy to pull apart the Moveable Racks on request, Rainbow Store employees retrieve merchandise located on high walls regularly upon request, which Zuehl concedes is appropriate.  (DSMF ¶¶ 12, 13, 33, 49).

22

*Dev., LLC,* No. 8:18-cv-614 (BKS/DJS), 2020 U.S. Dist. LEXIS 195964, at *20 (N.D.N.Y. Oct. 22, 2020); *Scheiner v. ACT Inc.*, No. 10-cv-0096, 2013 U.S. Dist. LEXIS 25204, at *9-10 (E.D.N.Y. Feb. 24, 2013) ("[f]ederal district courts 'have no jurisdiction to render declaratory judgments when the underlying questions are moot or otherwise   non   justiciable.'") (*quoting Pancake v. McCarthy*, 806 F. Supp. 378, 379 (E.D.N.Y. 1992)); *Brenchley v. Vill. of Phoenix*, No. 01-cv-190, 2005 U.S. Dist. LEXIS 48212, at *12-13 (N.D.N.Y. Sept. 30, 2005) (as "any apparent violation of the ADA [] has been definitively remedied . . . [c]onsequently, plaintiff's request for declaratory relief . . . must be dismissed.") As Plaintiff's ADA claims are moot or without merit, her declaratory relief claim should also be dismissed.

### B.   This Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiff's State and City Law Claims.

Under 28 U.S.C. § 1367(c), a District Court may decline to exercise supplemental jurisdiction over state or city law claims when it has dismissed all claims over which it has original jurisdiction. *See Perdum v. Forest City Ratner Companies*, 174 F. Supp. 3d 706, 718 (2016) (Judge Chen); *Carter v. City of N.Y.*, No. 14–CV–7165, 2015 U.S. Dist. LEXIS 174124, at *55–56 (E.D.N.Y. Dec. 11, 2015), *adopted in full by*, 2016 U.S. Dist. LEXIS 2847 (E.D.N.Y. Jan. 6, 2016); *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147–48 (E.D.N.Y. 2015) ("declin[ing] to retain jurisdiction over the remaining state law claims given the absence of any federal claims that survive summary judgment"); *Thomas v. Grunberg 77 LLC*, No. 15-cv-1925, 2017 U.S. Dist. LEXIS 104606, at *9 (S.D.N.Y. July 5, 2017) (plaintiff's state law claims solely present questions involving New York statutory and common law, questions that are "best left to the courts of the State of New York.") (*quoting Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001); *Compo v. River Real Estate Dev., LLC*, 2020 U.S. Dist. LEXIS at *24 (declining to exercise supplemental jurisdiction over state law claims).

"[T]he Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of on 12(b)(6) or summary judgment grounds, courts should abstain from exercising pendent jurisdiction." *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608 (WK), 2002 WL 1561126, at *3 (S.D.N.Y. July 15, 2002) (*quoting Drexel Burnham Lambert v. Saxony Heights Realty*, 777 F. Supp. 228, 240 (S.D.N.Y.1991); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)). As no exceptional circumstances exist and Plaintiff's federal claims are moot, the Court should decline to exercise jurisdiction over the state or city claims and dismiss the Complaint in its entirety with prejudice.

## CONCLUSION

For the foregoing reasons and upon all of the papers submitted herewith, Defendants respectfully request that the Court grant their motion for summary judgment dismissing this action in its entirety with prejudice.

Dated:  August 19, 2022
New York, New York

LITTLER MENDELSON P.C.

By: *Eric D. Witkin*
Eric D. Witkin
Rebecca Goldstein
900 Third Avenue
New York, NY  10022.3298
Telephone:  251.583.9600
Facsimile: 212.832.2719

Attorneys for Defendants