UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KELLY IRISH,

                         Plaintiff,

        -against-

TROPICAL EMERALD LLC AND RAINBOW
USA, INC.

                     Defendants.
------------------------------------------------------------x

**Docket No. 1:18-cv-00082-PKC-SJB**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**


# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**PAGE**

**PRELIMINARY STATEMENT**                                                    **1**

**STATEMENT OF FACTS**                                                       **2**

**ARGUMENT**                                                                 **2**

**POINT I**                                                                  **2**

**DEFENDANTS VIOLATE THE ADA**

**POINT II**                                                                 **4**

**THE ADA'S ALTERATION STANDARD APPLIES**

**POINT III**                                                                **6**

**DEFENDANTS VIOLATE THE ADA'S ALTERATION STANDARD**

**POINT IV**                                                                 **11**

**DEFENDANTS' EMPLOYEE ASSISTANCE POLICY IS REPUGNANT
TO THE ADA**
                                                                            **12**

**POINT V**

**DEFENDANTS VIOLATE THE ADA'S ALTERATION STANDARD
BY FAILING TO PROVIDE AN ACCESSIBLE ROUTE TO THE
FIXED MERCHANDISE DISPLAYS ON THE WALLS**
                                                                            **14**

**POINT VI**

**THE ADA'S READILY ACHIEVABLE STANDARD IS NOT
APPLICABLE TO RESOLVING THIS ACTION**
                                                                            **19**

**POINT VII**

**MOVEABLE DISPLAYS CAN CREATE ARCHITECTURAL BARRIERS
PROHIBITED BY THE ADA**
                                                                            **22**

**POINT VIII**

**DEFENDANTS' ARGUMENT CONCERNING INJUNCTIVE RELIEF**

**IS PREMATURE AND WITHOUT MERIT**

**22**

**POINT IX**

**A VIOLATION OF TITLE III OF THE ADA, IN AND OF ITSELF, WARRANTS AN ORDER FOR INJUNCTIVE RELIEF TO REMEDIATE THE VIOLATION**

**23**

**CONCLUSION**

**TABLE OF AUTHORITIES**

| CASE | PAGE(S) |
|---|---|
| *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165 (9th Cir. 2010) | 23 |
| *Baughman v. Walt Disney*, 685 F.3d 1131 (9th Cir. 2012) | 21 |
| *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131 (2d Cir. 1995) | 17 |
| *Bronx Independent Living Services v. Metropolitan Transportation Authority*, 358 F.3d 324 (S.D.N.Y. 2019) | 6 |
| *Brown v. Cnty. of Nassau*, 736 F. Supp. 2d 602 (E.D.N.Y. 2010) | 19 |
| *Camarillo v. Carrols Corp.*, 518 F.3d 153 (2d Cir. 2008) | 2, 3 |
| *Caruso v. Blockbuster-Sony Music Entertainment Centre at Waterfront*, 193 F.3d 730 (3d Cir. 1999) | 12 |
| *Celeste v. East Meadow Union Free School District*, 373 Fed.Appx. 85, 2010 WL 1572296 (2d Cir. April 21, 2010) | 17, 18 |
| *City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115 (2d Cir. 2010) | 23 |
| *Coalition of Montanans Concerned with Disabilities, Inc. v. Gallatin Airport Authority*, 957 F. Supp. 1166 (D. Montana 1997) | 10 |
| *Colorado Cross-Disability Coalition v. Too (Delaware), Inc.*, 344 F.Supp.2d 707 (2004) | 15 |
| *Disabled in Action v. Board of Elections in City of New York*, 752 F.3d 189 (2d Cir. 2014) | 12 |
| *Disabled in Action v. Trump International Hotel & Tower*, 2003 WL 1751785 (S.D.N.Y. April 2, 2003) | 8 |
| *Fair Housing Justice Center, Inc. v. 203 Jay St. Associates, LLC*, 2022 WL 3100557 (E.D.N.Y. Aug. 4, 2022) | 22 |
| *Felix v. N.Y.C. Transit Auth.*, 324 F.3d 102 (2d Cir. 2003) | 22 |
| *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004) | 21 |

| | |
|---|---|
| *Green v. New York City Dept. of Correction*, 1999 WL 219911 (S.D.N.Y. 1999) | 22 |
| *Irish v. Tropical Emerald LLC*, 2022 WL 2716182 (E.D.N.Y. July 13, 2022) | 15, 16, 18 |
| *Johnson & Johnson-Merck Consumer Pharm. Co. v. Procter & Gamble Co.*, 285 F. Supp. 2d 389 (S.D.N.Y. 2003) | 1 |
| *Kamal v. Kohl's Corp.*, 2019 WL 1051007 (W.D. Wis. Mar. 5, 2019) | 19 |
| *Kane v. Carmel School Dist.*, 2014 WL 7389438 (S.D.N.Y. Dec. 15, 2014) | 19 |
| *Kohler v. Presidio Intern., Inc.*, 2013 WL 1246801 (C.D.Cal. Mar. 25, 2013) | 15 |
| *Kreisler v. Second Avenue Diner Corp.*, 2012 WL 3961304 (S.D.N.Y. Sept. 11, 2012) *affirmed by* 731 F.3d 184 (2d Cir. 2013) | 23 |
| *Lieber v. Macy's West, Inc.*, 80 F.Supp.2d 1065 (N.D.Cal. 1999) | 15, 16, 19 |
| *Moore v. Chase, Inc.*, 2016 WL 866121 (E.D.Cal. March 7, 2016) | 13 |
| *Mullen v. Concorde Hospitality Enterprises*, 2022 WL 295880 (W.D. Penn Feb. 1, 2022) | 20 |
| *Newport Elecs., Inc. v. Newport Corp.*, 157 F. Supp. 2d 202 (D. Conn. 2001) | 22 |
| *Norkunas v. HPT Cambridge, LLC*, 969 F.Supp.2d 184 (D.Mass. 2013) | 3 |
| *Novartis Consumer Health, Inc. v. Johnson & Johnson Consumer Pharm. Co.*, 290 F.3d 578 (3d Cir. 2002) | 1 |
| *Obert v. The Pyramid*, 2005 WL 1009567 (W.D. Tenn. Apr. 8, 2005) | 21 |
| *Panzica v. Maz-Maz, Inc.*, 2007 WL 1732123 (E.D.N.Y. June 11, 2007) | 16, 17 |
| *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79 (2d Cir. 2004) | 22, 23 |
| *Roberts v. Royal Atlantic Corp.*, 445 F.Supp.2d 239 (E.D.N.Y. 2006) | 17 |
| *Roberts v. Royal Atlantic*, 542 F.3d 363 (2d Cir. 2008) | 4, 7, 17, 18 |
| *Rosa v. 600 Broadway Partners, LLC*, 175 F.Supp.3d 191 (S.D.N.Y. 2016) | 6 |
| *Tatum v. Doctor's Associates, Inc.*, 2016 WL 852458 (E.D. Lou. March 4, 2016) | 7 |

| | |
|---|---|
| *Tatum v. New Orleans City Park Improvement Association*, 2016 WL 1660201 (E.D. Lou. April 27, 2016) | 10 |
| *Thomas v. Ariel West*, 242 F.Supp.3d 293 (2017) | 8, 9, 10, 11 |
| *Thomas v. Kohl's Corporation*, 2018 WL 704691 (N.D.Ill. Feb. 5, 2018) | 18 |
| *Wilson v. Pier 1 Imports (US), Inc.*, 439 F. Supp. 2d 1054 (E.D. Cal. 2006) | 19 |
| **STATUTES** | |
| 42 U.S.C. § 12182(a) | 3, 21 |
| 42 U.S.C. § 12182(b)(1)(A)(iii) | 3 |
| 42 U.S.C. § 12182(b)(1)(B) | 3 |
| 42 U.S.C. § 12182(b)(2)(A)(iv) | 4, 14 |
| 42 U.S.C. § 12183(a)(2) | 4, 6, 8, 10 |
| 42 U.S.C. § 12188(a)(1) | 23 |
| 28 C.F.R. §36.304(d) | 14, 15 |
| 28 C.F.R. § 36.403(e)(1) | 8 |
| 28 C.F.R. part 36 | 4 |
| § 3.5 of the 1991 ADA Standards | 4, 13 |
| § 4.1.3(12)(b) of the 1991 ADA Standards | 13 |
| § 4.3.2 of the 1991 ADA Standards | 13 |
| § 4.3.3 of the 1991 ADA Standards | 13 |
| Rule 65(d) of the Federal Rules of Civil Procedure | 22 |

**PRELIMINARY STATEMENT**

In 2005, fourteen years after the enactment of the Americans with Disabilities Act (ADA), Defendants altered an empty retail space to create a woman's clothing store – the Rainbow Shop located at 493 Fulton Street in Brooklyn New York (hereinafter referred to as the "Store").  At the time, the Defendants could have arranged their merchandise display racks in a way that both the disabled and nondisabled could have had equal access as required by the ADA. But the Defendants made a calculated decision to arrange their merchandise display racks in such a manner that excludes the disabled to this day.

The Defendants' decision was unlawful in 2005 just as it is equally unlawful in 2022. Defendants brought this legal injury upon themselves and assumed the risk that one of those excluded disabled persons would seek to hold them accountable.  *Novartis Consumer Health, Inc. v. Johnson & Johnson Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002)("the injury defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself").  Plaintiff is now only seeking to compel what Defendants were required under the ADA to have done in the first place – provide the disabled with the same fundamental right of any customer to view and access merchandise for sale. *Johnson & Johnson-Merck Consumer Pharm. Co. v. Procter & Gamble Co.,* 285 F. Supp. 2d 389, 394 (S.D.N.Y. 2003) (finding that there was no real hardship to the defendant resulting from the issuance of an injunction from an activity "it probably should not have engaged in to begin with").

Plaintiff submits this Memorandum of Law in opposition to Defendants' motion for a dismissal that will essentially condone the Defendants' unlawful exclusion of the disabled.  On this motion, Defendants are correct that they remediated the violations relating to the entrance.

1

The disputed issues remaining in this litigation concerns the fixed and non-fixed merchandise display areas.

## STATEMENT OF FACTS

Plaintiff respectfully refers this Honorable Court to the Declaration of Glen H. Parker, Esq. with exhibits ("Parker Dec."), the documents attached to Defendants' moving papers, and Plaintiff's response to Defendants' Local Rule 56.1 Statement of Undisputed Facts for a recitation of the facts relevant to this motion.

## ARGUMENT

## POINT I

## DEFENDANTS VIOLATE THE ADA

Title III of the ADA prohibits discrimination against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation...." 42 U.S.C. § 12182(a). A claim under Title III of the ADA requires a plaintiff to establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA. *See Camarillo v. Carrols Corp.,* 518 F.3d 153, 156 (2d Cir. 2008). Defendants' papers do not dispute that the first two requirements have been met.  The issue whether the Defendants are discriminating within the meaning of the ADA.

In passing the ADA, Congress was clearly aware that "while the integration of people with disabilities will sometimes involve substantial short-term burdens, both financial and administrative, the long-range effects of integration will benefit society as a whole." H.R. Rep. No. 101-485, pt. 3, at 50, reprinted in 1990 U.S.C.C.A.N. 445, 473.  "Providing services in the

most integrated setting is a fundamental principle of the ADA." H.R. Rep. 101-485, pt. 2, at 102 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 385.

Defendants' exclusion of disabled patrons, by its undisputed failure to provide an accessible path of travel to and from merchandise for sale, violates multiple statutory sections of the ADA. First, Defendants violate the ADA, at 42 U.S.C. § 12182(a), by denying the disabled from the ability to fully and equally enjoy its goods and services in the same manner as non-disabled persons. In plain English, "fully and equally enjoy its goods and services" means in this case that disabled patrons have equal access to view and inspect the merchandise for sale. *See also Norkunas v. HPT Cambridge, LLC*, 969 F.Supp.2d 184, 192 (D.Mass. 2013) ("This limitation in the range of choices is also a cognizable injury under the ADA because the ADA is intended to provide disabled individuals with the same access to fully enjoy the benefits of all places of public accommodation".).

Second, Defendants violate the ADA, at 42 U.S.C. § 12182(b)(1)(A)(iii), by providing different and separate options/services to persons with disabilities than what is provided to the nondisabled. *See also Camarillo v. Carrols, supra,* 518 F.3d at 156 ("Put simply, [plaintiff] cannot experience "full and equal enjoyment" of Defendants' services if she is unable to access the list of the services available to her").

Third, Defendants violate the ADA, at 42 U.S.C. § 12182(b)(1)(B), by segregating the disabled from the nondisabled in the ability to access merchandise for sale. In so doing, Defendants violate the mandate to integrate the disabled.

Finally, Defendants violate the ADA, at 42 U.S.C. § 12183(a)(2), which governs alterations made to a facility[1] after the enactment of the ADA where the building existed before the ADA.  42 U.S.C. § 12183(a)(2) is commonly referred to as the ADA's "Alteration Standard." "If alterations have been made, a defendant discriminates if those altered areas-and paths of travel to altered areas that contain a primary function-are not made readily accessible to disabled individuals to the maximum extent feasible." *Roberts v. Royal Atlantic*, 542 F.3d 363, 369 (2d Cir. 2008).

And if no alterations have been made to a facility, then "a defendant nonetheless discriminates if it fails to remove any existing barriers to accessibility where such removal is readily achievable. [42 U.S.C.] § 12182(b)(2)(A)(iv)." *Id.* (citations omitted).  42 U.S.C. § 12182(b)(2)(A)(iv) is commonly referred to as the ADA's "Readily Achievable Standard."

## POINT II

## THE ADA'S ALTERATION STANDARD APPLIES

Defendants' Store has both fixed and non-fixed merchandise displays.  See paragraphs 9 and 13 of Defendants' Statement of Material Facts ("DSMF").  The fixed merchandise displays are located on the walls throughout the store. *Id.* and see Exhibit "2" to Parker Dec., page 124, lines 6-7 ("pretty much every wall is a fixed  shelving display unit"); and Exhibit "A" to the Declaration of Dominic Marinelli ("Marinelli Dec.") for pictures of the merchandise displayed on the wall identified as Images AE.2, AE.3, AE.4., AH.3, AH.7, AH.8 , AI.7 on pages 13, 16, 17, 19 of Plaintiff's expert report, dated February 11, 2021 (page 19 of Exhibit "A").

There is no accessible route to any of the fixed display units on the walls. See Exhibit "2"

---

[1] Facility is defined as "all or any portion of buildings, structures, site improvements, complexes, equipment, roads, walks, passageways, parking, or other real or personal property located on the site." See §3.5 of the 1991 ADA Standards (28 C.F.R. part 36).

to Parker Dec., page 153, lines 10-12.  The reason why there is no accessible route to the fixed display units on the wall is because the non-fixed/movable display racks obstruct and block an accessible route to the fixed display units on the walls throughout the store.  *Id.* at p. 124, lines 6-9, and 125, lines 13-18, 143, lines 15-18.  Defendants fail to provide an accessible path of travel to and from both the fixed and non-fixed merchandise display racks. *Id.* at page 167, lines 10-21; and page 218, lines 2-5 ("The point is you have fixed or built-in elements that, as my report indicates, are not on an accessible route …"); and see pages 4 to 11 of  Plaintiff's Expert Report in Exhibit "A" to Marinelli Dec.

### Defendants admit to performing Alterations

The ADA's Alteration Standard applies because Defendants admit that "to accommodate their occupancy, Rainbow Shop completed alterations prior to the March 15, 2012 **(in 2005)**" and that "these alterations therefore were required to comply with §4.1.6, Alterations on the 1991 ADA Standards unless compliance was *Technically Infeasible…*" . See page 1 of Defendants' Expert Report of June 11, 2021, Exhibit "B" to Marinelli Dec.; and see also fn.16 on page 10 of Defendants Memorandum of Law wherein defense counsel states "alterations were completed before the 2012 trigger date… ."

Moreover, in or around 2012, Defendants performed over one million dollars' worth of alterations to the interior of the Store.  See Exhibit "1" to Parker Dec. Specifically, on March 27, 2012, the Defendants filed a "Cost Affidavit" with the New York City Department of Buildings identifying substantial alterations inclusive of "modification to interior partitions, flooring, installed cash wraps, architectural modifications associated with new escalator openings, slat walls finishes, painting." *Id.*  Even if the Defendants did not admit to performing alterations, all the above-mentioned demolition and renovations are modifications that qualify as alterations

under the ADA.  *See Rosa v. 600 Broadway Partners, LLC*, 175 F.Supp.3d 191, 206-208

(S.D.N.Y. 2016) (the Court found that the defendants' interior and exterior construction work

performed to create a retail store "falls squarely within the ADAAG's definition of alteration,

which includes 'changes or rearrangement in structural parts or elements.'").

## POINT III

### DEFENDANTS VIOLATE THE ADA'S ALTERATION STANDARD

The ADA's Alteration Standard, at 42 U.S.C. § 12183(a)(2), identifies two categories of

discrimination:

1.  a failure to make the altered portions of a facility readily accessible; and

2.  a failure to make an accessible path of travel to an altered area containing a
    primary function.

Specifically, 42 U.S.C. § 12183(a)(2) states:

> with respect to a facility or part thereof that is altered by, on behalf of, or for the use
> of an establishment in a manner that affects or could affect the usability of the
> facility or part thereof, **a failure to make alterations in such a manner that, to
> the maximum extent feasible, the altered portions of the facility are readily
> accessible to and usable by individuals with disabilities**, including individuals
> who use wheelchairs. Where the entity is undertaking an alteration that affects or
> could affect usability of or **access to an area of the facility containing a primary
> function,** the entity shall also make the alterations in such a manner that, to the
> maximum extent feasible, **the path of travel to the altered area** and the
> bathrooms, telephones, and drinking fountains serving the altered area, **are readily
> accessible to and usable by individuals with disabilities** where such alterations to
> the path of travel or the bathrooms, telephones, and drinking fountains serving the
> altered area are not disproportionate to the overall alterations in terms of cost and
> scope (as determined under criteria established by the Attorney General).

42 U.S.C. § 12183(a)(2) (emphasis added).

These two categories are cumulative and are not mutually exclusive.  *See Bronx*

*Independent Living Services v. Metropolitan Transportation Authority*, 358 F.3d 324, 329

(S.D.N.Y. 2019) (with an analogous provision of Title II of the ADA, holding that "an alteration

can both affect the usability of the facility and affect the usability of or access to an area of a facility containing a primary function.").  So a defendant can perform alterations to an area that trigger both obligations – to make the altered area accessible and to make the path of travel to the altered area accessible.  As will be explained below, the Defendants performed alterations that triggered both obligations.

Because Defendants altered the entire store, they were obligated to make all the public use areas accessible to wheelchair users under the alteration standard. *Tatum v. Doctor's Associates, Inc*., 2016 WL 852458, at *4-5 (E.D. Lou. March 4, 2016) ("Defendant altered the entire parking space by changing its use from general parking to handicap-accessible parking, meaning that all aspects of the parking space must comply with the ADA. [Defendant's] argument that only the paint need comply with the ADA is frivolous.").  And, as mentioned above, the Defendants admit that their alterations "were required to comply with §4.1.6, Alterations on the 1991 ADA Standards". See page 1 of Defendants' Expert Report of June 11, 2021 in Exhibit "B" to Marinelli Dec.

It is critical to note that cost is not a consideration under the ADA's Alteration Standard. *Roberts v. Royal Atlantic*, *supra*, 542 F.3d at 371-372 ("The statute and regulations require that such facilities be made accessible even if the cost of doing so-financial or otherwise-is high. Indeed, in promulgating the implementing regulations, the Department explicitly rejected suggestions that cost be considered with respect to this provision.").  The only excuse for not making the altered areas accessible was if Defendants prove that it was "virtually impossible to comply fully" at the time when the alterations occurred.  *Id.*

What is more, the Alteration Standard "is backward-looking. It asks whether, at the time the [ ] renovations were performed, the defendants had made maximally feasible efforts to

7

achieve the requisite level of accessibility." *Id.* at 375.   Here, the Defendants have not

demonstrated that, at the time of the alterations, it was "virtually impossible" to have achieved a

wheelchair accessible store.  Before the alterations, no display fixtures existed (fixed or non-

fixed) and so Defendants could have complied with 42 U.S.C. § 12183(a)(2)'s directive to

perform the alterations so that "*the altered portions of the facility are readily accessible to and*

*usable by individuals with disabilities.*" Accordingly, Defendants violated the ADA because they

failed to make any effort, let alone maximum feasible efforts, to make the altered areas

accessible inclusive of the altered fixed and non-fixed merchandise display areas.

 As mentioned before, under the ADA's Alteration Standard, 42 U.S.C. § 12183(a)(2),

discrimination includes a failure to make an accessible path of travel[2] to an altered area

containing a primary function.  Here, Defendants also committed discrimination by failing to

make an accessible path of travel from the public entrance to both the fixed and non-fixed

merchandise displays.  *See Disabled in Action v. Trump International Hotel & Tower*, 2003 WL

1751785, at *5 (S.D.N.Y. April 2, 2003) ("if alterations involve an area containing a primary

function, then work must be done to create an accessible path of travel from the building exterior

to the altered area").

 Judge Laura Taylor Swain of the Southern District of New York confronted the identical

issue raised herein as to the ADA requirement for providing an accessible route to merchandise

display units in a retail clothing store. *See Thomas v. Ariel West*, 242 F.Supp.3d 293 (2017).  The

*Thomas* case involved a retail clothing store (Urban Outfitters) in Manhattan where a wheelchair

user plaintiff claimed that the store failed to provide an accessible route to merchandise display

---

[2] "Path of travel" is defined as "a continuous, unobstructed way of pedestrian passage by means of which
the altered area may be approached, entered, and exited, and which connects the altered area with an exterior
approach (including sidewalks, streets, and parking areas), an entrance to the facility, and other parts of the
facility." 28 C.F.R. § 36.403(e)(1).

racks. *Id.* Ultimately, the Court held that the "merchandise display areas" are a primary function of a clothing store; and that a wheelchair accessible route must be provided to the merchandise display areas. *Id.*

Specifically, the Court in *Thomas* analyzed whether merchandise display areas fall within the path of travel obligations for primary function areas and found:

> Merchandise display areas and dressing and fitting rooms are primary function areas of a clothing store, and so alterations to those spaces must comply with any standard of new construction, including any requirement that those spaces must be on an accessible route. The term "primary function" means "a major activity for which the facility is intended," such as "the customer services lobby of a bank, the dining area of a cafeteria, [or] the meeting rooms in a conference center." 28 C.F.R. § 36.403(b). It is indisputable that this definition covers merchandise display areas and dressing rooms in a clothing store, and the DOJ's regulations specifically list "[r]emodeling merchandise display areas or employee work areas in a department store" as an example of an "[a]lteration[ ] that affect[s] the usability of or access to an area containing a primary function." 28 C.F.R. § 36.403(c)(1)(i). Because the alterations to Store # 143 affected the usability of, or access to, areas containing merchandise display areas and fitting rooms, all of the 1991 Standards for new construction—Sections "4.1 through 4.35"—apply to the display and fitting room areas of the Landing and the Mezzanine, **including any requirement that those spaces be on an accessible route**. 1991 Standards §§ 4.1.1(1), 4.1.6(1)(b), 4.1.6(2).

*Id.* at 300 (emphasis added).  For the same reasons, the merchandise display areas in the Store are a primary function area for the Defendants and those areas must be on an accessible route.

Upon finding that the merchandise display areas are a primary function area, the Court in *Thomas* then explained how the ADA Standards require an accessible route:

> Section 4.1.3 requires that "[a]t least one accessible route complying with 4.3 shall connect accessible building or facility entrances with all accessible spaces and elements within the building or facility." 1991 Standards § 4.1.3(1). Other provisions specify that merchandise display units and fitting rooms must be on accessible routes. See id. § 4.1.3(12)(b) ("Shelves or display units allowing self-service by customers in mercantile occupancies shall be located on an accessible route complying with 4.3....")

9

*Id.* The Court concluded its analysis by holding that "Defendants are not relieved of the overarching obligation to ensure that primary function areas of Store # 143 (such as merchandise display and fitting room areas) are on accessible routes." *Id.* at 301.

Accordingly, the Defendants in this case violate the ADA's Alteration Standard by failing to make the path of travel to the merchandise display areas accessible to wheelchair users. *Id.*; and *see also Tatum v. New Orleans City Park Improvement Association*, 2016 WL 1660201, *4-5 (E.D. Lou. April 27, 2016) (granting summary judgment as to path of travel barriers after modifications to primary function of stadium triggered path of travel alteration requirement); and *Coalition of Montanans Concerned with Disabilities, Inc. v. Gallatin Airport Authority*, 957 F. Supp. 1166, 1171 (D. Montana 1997) (holding that since defendant altered the restaurant, which was a "primary function" at the airport, it was obligated to provide an accessible path of travel).

It is important to reiterate that 42 U.S.C. § 12183(a)(2)'s requirement to make an accessible path of travel to altered areas containing a primary function applies to areas that were not altered themselves.  Here, the entire store, inclusive of the path of travel and the merchandise display racks areas, were admittedly altered.  See page 1 of Defendants' Expert Report of June 11, 2021 in Exhibit "B" to Marinelli Dec.  So Defendants violated both categories of discrimination under the ADA's Alteration Standard (42 U.S.C. § 12183(a)(2)) - a failure to make the altered portions of a facility readily accessible; and a failure to make an accessible path of travel to an altered area containing a primary function.

10

## POINT IV

## DEFENDANTS' EMPLOYEE ASSISTANCE POLICY IS REPUGNANT TO THE ADA

Defendants admit that the disabled cannot access the merchandise display racks and now seek to excuse their segregation by claiming that they have a policy to provide employee assistance if requested by the disabled. But Defendants have produced no written policy or training materials to employees evidencing such a policy or practice. In fact, when Plaintiff visited and attempted to view merchandise at the Store, she explicitly asked employees for assistance. See page 90, lines 13 to page 91, line 16 of Exhibit "A" to Declaration of Eric Witkin, Esq. ("Witkin Dec."). But both a Store manager and employee informed Plaintiff that they could not and would not move the merchandise displays to assist the wheelchair bound Plaintiff. *Id.* Accordingly, at a minimum, there is a question of fact as to whether such a policy exist and/or whether Defendants tolerate the breach of this policy.

Defendants argue that having employees available to retrieve merchandise for the disabled satisfies their obligations under the ADA. See Defendant's Memorandum of Law, page 16. But the Court in *Thomas* rejected the same argument and held that:

> Defendants here cannot avoid their obligation to provide equal access to all merchandise display areas, including the display area on the Landing, by simply displaying the same merchandise in another accessible area of the store, **or by having an employee bring merchandise from the Landing to a wheelchair user who is unable to get to the Landing. These substitutes do not provide any access at all, much less equivalent or greater access**, to the Landing, which is required to be accessible, and clearly deprive disabled patrons of the opportunity to shop on the newly-constructed Landing in the same fashion as customers who are not disabled. Furthermore, Defendants' approach is contrary to Title III's overarching purpose of providing maximum integration of disabled persons in places of public accommodation. "Separate, special, or different programs that are designed to provide a benefit to persons with disabilities cannot be used to restrict the participation of persons with disabilities in general, integrated activities." *Id.* (quoting 28 C.F.R. part 36 app. B, at 622).

*Thomas v. Ariel West*, *supra,* 242 F.Supp.3d at 303 (emphasis added).

11

Likewise, the Second Circuit had held that making the disabled dependent on the assistance of others is discrimination under the ADA. *See Disabled in Action v. Board of Elections in City of New York,* 752 F.3d 189, 199-200 (2d Cir. 2014) (a disabled person's "right to vote should not be contingent on the happenstance that others are available to help"). Similarly, Plaintiff's ability to see, touch and review merchandise should not be contingent on the happenstance of when an employee is available to help.  Even if the customer service provided to the disabled is allegedly superior, relegating the disabled to the status of a child reliant on a parent for help violates the ADA.  *See Caruso v. Blockbuster-Sony Music Entertainment Centre at Waterfront*, 193 F.3d 730, 740 (3d Cir. 1999) (holding that defendant's claim that they were providing a different but better option for the disabled was "inconsistent with the plain language of Title III" and "repugnant to the ADA").

## POINT V

### DEFENDANTS VIOLATE THE ADA'S ALTERATION STANDARD BY FAILING TO PROVIDE AN ACCESSIBLE ROUTE TO THE FIXED MERCHANDISE DISPLAYS ON THE WALLS

Defendants' motion papers completely ignore the fact that the Store has fixed merchandise displays on the walls, and that no accessible route is provided to and from these fixed merchandise displays. See pages 4 to 11 of  Plaintiff's Expert Report, Exhibit "A" to Marinelli Dec.; and Exhibit "B" to Witkin Dec, page 167, lines 10-21; and page 218, lines 2-5 ("The point is you have fixed or built-in elements that, as my report indicates, are not on an accessible route …").  Indeed, Defendants make no argument to claim that they are not required to provide an accessible route to and from the fixed merchandise displays located on the side walls throughout the Store.

So, at a bare minimum, Defendants have an obligation under the ADA to provide an

accessible route to and from the fixed merchandise displays located on the side walls throughout the store. §4.1.3(12)(b) of the 1991 ADA Standards require that merchandise located on fixed aisle shelving in a retail store must be located on an accessible route complying with § 4.3. And § 4.3.2 of the 1991 ADA Standards requires that the Store provide an accessible route[3] throughout the public areas of the Store.  § 4.3.3 of the 1991 ADA Standards requires the accessible route to have a minimum clear width of 36 inches.  When a wheelchair must turn around and/or through aisles that are less than 48 inches wide, then § 4.3.3 requires a minimum clear aisle width of 42 inches approaching the turn, a minimum clear aisle width of 48 inches at the turn, and a minimum clear aisle width of 42 inches leaving the turn.  See Design Figures 7, 7(a) and 7(b) to § 4.3.3 of the 1991 ADA Standards.

Both experts agree the Store does not provide a minimum 36 inch accessible route to the merchandise displays inclusive of the fixed displays on the walls.  See paragraph 15 of  Marinelli Dec.; and Exhibit "A" to Marinelli Dec.  Consequently, Defendants violate the 1991 ADA Standards by failing to provide a minimum 36 inch wide accessible route to the fixed merchandise displays on the side walls throughout the store. *See Moore v. Chase, Inc.*, 2016 WL 866121, at *8 (E.D.Cal. March 7, 2016) (finding a violation of the ADA where the "aisles within the convenience store are less than 36 inches and the dead-end aisle in the convenience store lacks sufficient turning clearance [of 42 inches as required by § 4.3.3 of the 1991 Standards]").

---

[3] § 3.5 of the 1991 ADA Standards defines "Accessible Route" as "[a] continuous unobstructed path connecting all accessible elements and spaces of a building or facility…"

**POINT VI**

**THE ADA'S READILY ACHIEVABLE STANDARD IS NOT APPLICABLE
TO RESOLVING THIS ACTION**

The ADA's Readily Achievable Standard applies to facilities existing before 1993 that have <u>not</u> undergone alterations since 1993.  See 42 U.S.C. § 12182(b)(2)(A)(iv).  The Readily Achievable Standard does not apply here because Defendants admit to having performed alterations and so the ADA's Alteration Standard applies. See Point II above.

Defendants' statutory citations for applying the readily achievable standard to merchandise displays are for "existing facilities" that have not undergone alterations since 1992. For example, Defendants repeatedly cite to 28 C.F.R. §36.304 and its subsections (b)(4) and (f) to claim that they are only required to "rearrange display racks" when such rearrangement does not "result in a significant loss of selling or serving space."  But 28 C.F.R. §36.304 makes plain that the obligations under the ADA's Alteration Standard exist coextensively with the Readily Achievable Standard.

28 C.F.R. §36.304(d) is entitled "*Relationship to alterations requirements of subpart D of this part*.  And 28 C.F.R. §36.304 acknowledges that ADA's path of travel obligations to areas containing a primary function under 28 C.F.R. §36.403 are required.  28 C.F.R. §36.304(d)(1) does, however, carve out a small exception to the ADA's path of travel requirements that is triggered only when a public accommodation is undertaking the alterations solely for the purpose of providing wheelchair accessibility. 28 C.F.R. §36.304(d)(1) ("The path of travel requirements of § 36.403 shall not apply to measures taken solely to comply with the barrier removal requirements of this section.").

This narrow exception does not apply here because the Defendants undertook their alterations in order to create a retail clothing store as their expert states: "to accommodate their

14

occupancy, Rainbow Shop completed alterations prior to the March 15, 2012 (**in 2005**)". See page 1 of Defendants' Expert Report of June 11, 2021, Exhibit "B" to Marinelli Dec. Consequently, the narrow exception of 28 C.F.R. §36.304(d)(1) does not apply.  The Defendants therefore are required to comply with the path of travel requirements under 28 C.F.R. §36.403.

Likewise, the cases cited by Defendants never analyze the path of travel requirements under 28 C.F.R. §36.403, let alone, the requirements under the ADA's Alteration Standard per 42 U.S.C. § 12183(a)(2). See Point 2 "Barrier Removal Standard Applies to Movable Racks", pages 10-12 of Defendant's Memorandum of Law, for the cases of *Lieber v. Macy's West, Inc.*, 80 F.Supp.2d 1065 (N.D.Cal. 1999); *Colorado Cross-Disability Coalition v. Too (Delaware), Inc.*, 344 F.Supp.2d 707 (2004); and *Kohler v. Presidio Intern., Inc.*, 2013 WL 1246801, at *13 (C.D.Cal. Mar. 25, 2013).

But even if the Readily Achievable Standard applied to this altered facility, Defendants have failed to present admissible evidence that rearranging the merchandise display racks would "result in a significant loss of selling or serving space" – the standard articulated by Defendants to determine if rearranging the merchandise display racks is readily achievable. See Defendants' Memorandum of Law, Point 4, pages 14-15.  Defendants' motion provides no witness testimony to support a position that rearranging the merchandise display racks would  "result in a significant loss of selling or serving space".   Nor are the Defendants permitted to offer such witness testimony in this litigation.  *See Irish v. Tropical Emerald LLC*, 2022 WL 2716182 (E.D.N.Y. July 13, 2022).

To circumvent Your Honor's ruling precluding witness testimony on financial impact, defense counsel assumes the role of expert witness by declaring as "self-evident" what the financial impact would be to the Defendants.  Specifically, page 15 of Defendant's Memorandum

of Law opines that: "it is self-evident that permanently widening all side aisles surrounding the movable racks to 36 inches would require rainbow to remove merchandise racks" and that "it is self-evident that if racks were permanently removed, Rainbow would lose selling space and merchandise, adversely impacting the business."  Defense counsel's assertions are inadmissible, improper, and grossly insufficient to establish the truth of these "self-evident" representations.

Your Honor has already held that the financial impact to the Defendants of widening the aisles is properly expert testimony.  *Irish v. Tropical Emerald LLC, supra,* 2022 WL 2716182 at *5-8.  For all the reasons explained in Your Honor's decision, defense counsel's statements are not "self-evident" but require the analysis and opinions of an expert witness. *Id.* Defense counsel therefore is precluded from arguing that these financial impact statements are "self-evident". *Id.*

Nor can the Defendants rely on documents to support this defense because, during this litigation, "Defendants were asked for all documents that analyze the financial impact of ADA compliance ... and they said they had no such documents." *Irish v. Tropical Emerald LLC, supra*, 2022 WL 2716182 at *3.   Overall, Defendants offer nothing more than mere speculation to support a position that rearranging the merchandise display racks would  "result in a significant loss of selling or serving space". *Lieber v. Macy's West, Inc.*, *supra*, 80 F.Supp.2d at 1078 ("opinion testimony of Macy's lay witnesses was not probative. It was not based on more than "guesstimates" of the impact of providing more space between racks and the concomitant impact on selling space. There was an absence of any empirical or other studies or investigation into the feasibility of providing access.").

What is more, the Defendants provide the Court with the wrong analysis for the readily achievable standard.  Defendants do so by repeatedly using the readily achievable analysis articulated in *Panzica v. Maz-Maz, Inc.*, 2007 WL 1732123, at *5 (E.D.N.Y. June 11, 2007) (the

court in *Panzica* in turn used the readily achievable analysis articulated by the district court in *Roberts v. Royal Atlantic Corp.,* 445 F.Supp.2d 239 (E.D.N.Y. 2006)).

But the Second Circuit Court of Appeals <u>reversed</u> the district court's decision in *Roberts v. Royal Atlantic Corp.* and articulated the proper analytical standard for readily achievable. *See Roberts v. Royal Atlantic*, 542 F.3d 363, 369 (2d Cir. 2008). The Second Circuit held that the standard used in *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 137–138 (2d Cir. 1995) is applicable for readily achievable. *Id.* at 368 ("plaintiff to articulate a plausible proposal for barrier removal, the costs of which, facially, do not clearly exceed its benefits… Neither the estimates nor the proposal are required to be exact or detailed, for the defendant may counter the plaintiff's showing by meeting its own burden of persuasion and establishing that the costs of a plaintiff's proposal would in fact exceed the benefits."). And per *Borkowski*, summary judgment is only appropriate when "the plaintiff's proposal is either clearly ineffective or outlandishly costly." *Borkowski v. Valley Cent. Sch. Dist.*, *supra*, 63 F.3d at 139.

Contrary to defense counsel's representation, a plaintiff is not "required to present expert testimony" under the *Borkowski* standard. *See Celeste v. East Meadow Union Free School District*, 373 Fed.Appx. 85, 2010 WL 1572296, at *1 and *2 (2d Cir. April 21, 2010). The Second Circuit in *Celeste* held that the plaintiff's initial burden is "not a heavy one". *Id.*

Here, Plaintiff has more than satisfied her initial burden by proposing that the Defendants rearrange the merchandise display racks to provide an accessible path of travel. See Exhibit "A" to Witkin Dec., Pl. Tr. 172:17-21; and Exhibit "A" to Marinelli Dec. There is no cost to perform this rearrangement as it only requires the Defendants to direct their employees to rearrange the merchandise and use a ruler to measure the path of travel. *Id.* (plaintiff in the *Celeste* case satisfied his burden to provide cost-effective, plausible methods to remedy the inaccessibility by

his own testimony that the Defendants should install curb cuts, fix the pavement, and removing fixtures).  To the extent that the Defendants argue that there is a cost for using their employees, such a cost is *de minimis*.  *Id.* at \*2 (finding that the plaintiff in *Celeste* "offered plausible, simple remedies, which are de minimis compared with the corresponding benefits by way of access achieved.").

Plaintiff cannot offer evidence of the financial impact to the Defendants' business because the Defendants did not provide Plaintiff with any documents or witness testimony during discovery from which Plaintiff could assess such an impact. *Irish v. Tropical Emerald LLC, supra,* 2022 WL 2716182 at \*3.   Nor is it Plaintiff's burden to take into account other factors like financial impact as the Second Circuit in *Roberts* explicitly rejected such a requirement. *Roberts v. Royal Atlantic*, *supra,* 542 F.3d at 378 ("the district court's finding that the plaintiffs had failed to take into account various other factors is of little import, for once the plaintiffs met their initial burden of production, it was the Defendants' responsibility to prove that the proposals were not readily achievable.").  Accordingly, Defendants have failed to meet their burden of persuasion under the readily achievable standard of conducting the investigation needed and presenting genuine impediments to effectuating the proposals. *Roberts v. Royal Atlantic*, *supra,* 542 F.3d at 373, n.6 (rejecting imposing a burden upon "a plaintiff [to] furnish precise cost estimates and specific design details regarding his proposed accommodation. We think that this asks too much of the typical plaintiff, particularly where defendants can so quickly dispose of non-meritorious claims by reference to their knowledge and information regarding their own facilities.").

Overall, determining whether remediation is readily achievable "involves a fact intensive inquiry that will **rarely be decided on summary judgment**.' " *Thomas v. Kohl's Corporation*,

2018 WL 704691, at *4 (N.D.Ill. Feb. 5, 2018) quoting *Wilson v. Pier 1 Imports (US), Inc.*, 439 F. Supp. 2d 1054, 1067 (E.D. Cal. 2006) (emphasis added); *see also Brown v. Cnty. of Nassau*, 736 F. Supp. 2d 602, 622 (E.D.N.Y. 2010).   In conclusion, the drastic remedy of summary judgment is not appropriate because the Defendants fail to demonstrate as a matter of law that "the plaintiff's proposal is either clearly ineffective or outlandishly costly." *Borkowski v. Valley Cent. Sch. Dist.*, *supra*, 63 F.3d at 139; and *see also Kane v. Carmel School Dist.,* 2014 WL 7389438, at *6 (S.D.N.Y. Dec. 15, 2014) (denying summary judgment because the disabled plaintiff's proposal to modify a front door entrance and provide a raised conductor's podium "appear facially reasonable and plausible and are neither outlandishly costly nor clearly ineffective.").

## POINT VII

### MOVEABLE DISPLAYS CAN CREATE ARCHITECTURAL BARRIERS PROHIBITED BY THE ADA

Courts have consistently held that movable objects, including display racks, can become "architectural barriers" in violation of the ADA when the moveable objects limit or obstruct an accessible path of travel. See 28 C.F.R. § 36.304(b)(4) (identifying various moveable objects in a list of potential architectural barriers); and *see also Lieber v. Macy's W., Inc.*, *supra,* 80 F. Supp. 2d at 1077 ("the spacing of moveable display racks is a barrier under the ADA" when it obstructs the required accessible path of travel); *Thomas v. Kohl's Corporation*, *supra,* 2018 WL 704691, at *3; and *Kamal v. Kohl's Corp.*, 2019 WL 1051007, at *2 (W.D. Wis. Mar. 5, 2019) ("[T]he question is whether Kohl's failed to remove a barrier to Kamal's equal access. Regardless whether the statute or regulations include precise measurements, Kohl's must still comply with that more general requirement.").

The ADA clearly makes the Defendants liable for failing to provide an accessible path of travel to and from merchandise display racks. Whether the merchandise display racks are movable or fixed is a distinction without a difference for purposes of determining liability. The issue is not the display racks themselves but rather the ADA's requirements to provide an accessible route.

Plaintiff is not claiming that the merchandise display racks themselves are inaccessible, such as a claims that the dimensions of this display racks violate certain ADA standards. So even if Defendants are correct that the ADAAG (a/ka the 1991 ADA Standards) do not cover merchandise display racks, such an argument is not relevant.

What is relevant is whether the Defendants can position the merchandise display racks in its altered premises in such a way that excludes the disabled from being able to travel through the store and to the merchandise display racks. In other words, do the Defendants an obligation to provide an accessible route to the merchandise display racks.

Defendants argue that they can exclude the disabled because the fixtures creating the exclusion are movable. Defendants' retrograde position is that a retailer can move into an empty space and intentionally position movable merchandise displays in such a way that only able bodied persons and not the disabled can access the merchandise. *See Mullen v. Concorde Hospitality Enterprises*, 2022 WL 295880, at fn. 5 (W.D. Penn Feb. 1, 2022) ("[Defendants] interpretation of the ADA and the ADA Standards, taken to its logical extreme, would seemingly permit [Defendants], without violating the ADA, to provide 'accessible' hotel rooms that exclusively contain beds that are of such a height that they are entirely unusable by individuals with disabilities, unless and until new ADA Standards are promulgated. Such a result would seemingly fly in the face of the ADA's well-recognized purpose.").

20

The ADA does not just regulate the design of a public accommodation but regulates the entirety of the services and use of a public accommodation.  The ADA concerns itself with the use of facilities just as much as the design of facilities.  *See e.g. Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004).  The *Fortyune* case concerned a defendant theater who requested to dismiss the case because it provided wheelchair accessible seating in compliance with the ADA standards. The Ninth Circuit held that a public accommodation violates the ADA when it does not maintain its accessible features in a manner useable to the disabled. *Id. at 1084-85; see also Obert v. The Pyramid*, 2005 WL 1009567, at *5 (W.D. Tenn. Apr. 8, 2005), ("Plaintiffs do not assert that Defendant failed to construct and design handicapped parking, wheelchair accessible entrances, or an ingress and egress lane. Plaintiffs instead assert that Defendants failed to provide access to the designated handicapped ingress and egress lane and thus Plaintiffs did not have use of the accommodation. The Court therefore holds that Defendant's alleged compliance with the ADAAG guidelines does not preclude recovery under the ADA.").

For "use" violations under 42 U.S.C. § 12182, "public accommodations must start by considering how their facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience." *Baughman v. Walt Disney*, 685 F.3d 1131, 1135 (9th Cir. 2012). Thus, if a public accommodation can make a disabled person's experience "less onerous and more akin to that enjoyed by its able-bodied patrons, it must take reasonable steps to do so." *Id.* at 1135-36. As explained above, the dispositive legal analysis is whether the Defendants provide the disabled Plaintiff with a shopping environment that is equal to what is provided to the nondisabled. Plaintiff is not asking for Defendants to give a preference to the disabled but rather to provide equal access and convenience as provided to the nondisabled.

S*ee Felix v. N.Y.C. Transit Auth.*, 324 F.3d 102, 107 (2d Cir. 2003) ("The ADA mandates reasonable accommodation of people with disabilities in order to put them on an even playing field with the non-disabled; it does not authorize a preference for disabled people generally.").

## POINT VIII

### DEFENDANTS' ARGUMENT CONCERNING
### INJUNCTIVE RELIEF IS PREMATURE AND WITHOUT MERIT

Defendants' motion to have the Court dismiss the request for injunctive relief is not ripe for review because liability has not been resolved.  Rule 65(d) of the Federal Rules of Civil Procedure defines the scope of injunctive relief but provides no basis for dismissal by a motion for summary judgment. *See Newport Elecs., Inc. v. Newport Corp.*, 157 F. Supp. 2d 202, 207 (D. Conn. 2001) (summary judgment motion on scope of injunctive relief premature until question of liability determined); and *see also Fair Housing Justice Center, Inc. v. 203 Jay St. Associates*, LLC, 2022 WL 3100557, at *9 (E.D.N.Y. Aug. 4, 2022) ("Regardless of the merits of [Defendant's] argument, the scope and appropriateness of injunctive relief is not a proper inquiry at the motion to dismiss stage.").  Accordingly, any concerns regarding the scope of an injunction are properly raised at the conclusion of litigation. *Green v. New York City Dept. of Correction*, 1999 WL 219911, at *8 (S.D.N.Y. 1999) ("it is premature to determine what the scope of injunctive relief would be prior to a determination of liability.").

## POINT IX

### A VIOLATION OF TITLE III OF THE ADA, IN AND OF ITSELF, WARRANTS AN
### ORDER FOR INJUNCTIVE RELIEF TO REMEDIATE THE VIOLATION

Even if injunctive relief can be decided before making a determination of liability, Plaintiff is statutorily entitled to an injunction.  "A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages." *Powell v.*

*Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir. 2004); and 42 U.S.C. § 12188(a)(1).

While courts typically have discretion regarding whether to issue an injunction, Congress has

explicitly stated in the language of Title III of the ADA that an injunction shall be issued to

remedy violations thereof.  42 U.S.C. § 12188(a)(1) and *see Antoninetti v. Chipotle Mexican*

*Grill, Inc.*, 643 F.3d 1165, 1175 (9th Cir. 2010) (holding that to obtain injunctive relief for a

violation of Title III of the ADA, a plaintiff need not satisfy the standard requirements for

equitable relief because the ADA specifically provides for injunctive relief).  Accordingly, where

Congress expressly authorizes injunctive relief to halt or prevent a violation of a federal statute,

the traditional equitable criteria do not govern. *See. e.g., City of New York v. Golden Feather*

*Smoke Shop, Inc.*, 597 F.3d 115, 120-121 (2d Cir. 2010) (when party seeks statutory injunction,

showing irreparable harm is unnecessary).  Accordingly, it is axiomatic that an injunction should

be issued requiring Defendants to remediate their violations of the ADA. *See e.g. Kreisler v.*

*Second Avenue Diner Corp*., 2012 WL 3961304, at *7 (S.D.N.Y. Sept. 11, 2012) (injunction

ordering that "defendants shall initiate the formal process for seeking permission to install a

permanent ramp) *affirmed by* 731 F.3d 184 (2d Cir. 2013).


## CONCLUSION

Accordingly, Plaintiff respectfully requests that the Court deny Defendants' motion.

Dated:  September 30, 2022
         New York, New York

                                            **PARKER HANSKI LLC**

                                    By: _____/s/_____
                                            Glen H. Parker, Esq.
                                            Attorneys for Plaintiff
                                            40 Worth Street, Suite 602
                                            New York, New York 10013
                                            Telephone: (212) 248-7400
                                            Email:ghp@parkerhanski.com

23