UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
KELLY IRISH,

                          Plaintiff,

                  - against -

TROPICAL EMERALD LLC, and RAINBOW
USA, INC.,

                          Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-82 (PKC) (SJB)

PAMELA K. CHEN, United States District Judge:

Plaintiff Kelly Irish ("Plaintiff" or "Irish") brings this action against Tropical Emerald LLC
("Tropical Emerald") and Rainbow USA, Inc. ("Rainbow") (collectively, "Defendants") alleging
discrimination in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C.
§ 12181 *et. seq.*, the New York State Executive Law, the New York City Administrative Code,
and the New York State Civil Rights Law. Defendants have moved for summary judgment on all
claims. Also pending is Plaintiff's motion to strike portions of Defendants' reply in support of
their summary judgment motion. For the reasons that follow, Defendants' motion for summary
judgment is granted and Plaintiff's motion to strike is denied.

# BACKGROUND

## I.     Factual Background[1]

### A.     Rainbow's Store

Defendant Rainbow operates a retail clothing store known as the Rainbow Shop ("Store"), located at 493 Fulton Street, in Brooklyn, New York.  (Pl.'s Rule 56.1 Resp., Dkt. 110 ("Pl.'s 56.1"), ¶ 2.)  The building in which the Store is located is owned by Defendant Tropical Emerald and was built in or before 1937.  (*Id.* ¶¶ 3–4.)  Rainbow completed alterations to the Store in 2005, but the nature of those alterations is unclear.  (*See* Defs.' Mem. of Law in Supp. of Motion for Summ. J., Dkt. 100 ("Defs.' Mem."), at 10 n.16 (indicating that alterations were completed before March 15, 2012); Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J., Dkt. 109 ("Pl.'s Mem."), at 5 (stating that Defendants "admit" to completing alterations in 2005); Dominic Marinelli, Rebuttal Expert Report Prepared for Defs. (June 11, 2021), Dkt. 104-2 ("June 2021 Marinelli Report"), at ECF 12[2] (stating that Rainbow completed alterations in 2005 "[t]o accommodate their occupancy").)

The Store has four sales floors, each of which is packed with merchandise.  (Pl.'s 56.1 ¶¶ 8–9; Decl. of Jonathan Hersch in Supp. of Defs.' Mot. for Summ. J., Dkt. 103 ("Hersch Decl."),

---

[1] Unless otherwise noted, a standalone citation to a party's 56.1 statement denotes that this Court has deemed the underlying factual allegation undisputed.  Any citation to a 56.1 statement incorporates by reference the documents cited therein; where relevant, however, the Court may cite directly to an underlying document.  The Court construes any disputed facts in the light most favorable to Plaintiff, as the non-moving party, for purposes of Defendants' summary judgment motion.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  However, where Plaintiff either (i) admits or (ii) denies without citing to admissible evidence certain of the facts alleged in Defendants' Local Rule 56.1 Statement, (*see* Defs.' Rule 56.1 Statement, Dkt. 99), the Court may deem any such facts undisputed.  *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York 56.1(c)–(d).

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

¶¶ 4–5; Tr. of Pl. Dep., Dkt. 101-1 ("Pl. Dep. Tr."), at 107:4–16.)  Merchandise is displayed on moveable merchandise racks and on the side walls.  (Pl.'s 56.1 ¶¶ 9, 13.)  On three of the floors, the moveable racks are spaced closely together "in order to maximize the amount of inventory on the sales floors."  (*Id.* ¶ 9; Hersch Decl. ¶ 5.)  According to Jonathan Hersch, who is Rainbow's Vice President of Planning and Allocations, "[i]t is critical to Rainbow's merchandising strategy that [Rainbow] place as much inventory in as many styles as possible on the floor as [Rainbow's] prices are meant to accommodate shoppers with limited means, and the Store has limited backroom storage space."  (Hersch Decl. ¶ 5.)

### B.     Plaintiff's Visit to the Store

Plaintiff visited the Store in 2017.  (Pl.'s 56.1 ¶ 19; Pl. Dep. Tr. 28:4–11, 29:15–18, 88:2–15.)  During that visit, Plaintiff, who uses a wheelchair, encountered barriers and accessibility issues that made it difficult for her to navigate the Store and shop for clothing. (Pl.'s 56.1 ¶¶ 1, 19–21; Pl. Dep. Tr. 90:13–21, 92:15–93:8, 108:6–20.)  In particular, the aisles between the clothing racks on the bottom floor were too narrow for Plaintiff's wheelchair and, as such, Plaintiff was unable to look at the clothing.  (Pl.'s 56.1 ¶ 21; Pl. Dep. Tr. 90:13–20, 93:5–8.)  Plaintiff asked a Store attendant to move the racks so that Plaintiff "could get through," but was informed that the attendant was "not allowed to move them." (Pl. Dep. Tr. 90:22–91:3.)  Plaintiff then spoke with a manager, who reiterated that Store employees were "not allowed to move [the racks]."  (Pl. Dep. Tr. 91:2–8.)  Plaintiff told the manager that she was unable to "get through the aisles to see the clothing," to which the manager responded: "I don't know what to tell you."  (Pl. Dep. Tr. 91:3–14.) Plaintiff left the Store feeling frustrated and has not been back since.  (Pl. Dep. Tr. 91:13–16, 93:21–23.)

###### C.       Defendants' Subsequent Remediation Efforts

After this lawsuit was filed in January 2018, Defendants took certain steps to remediate the accessibility barriers identified by Plaintiff and her expert, Jimmy Zuehl ("Zuehl").  The Store created a wheelchair accessible route through the middle of each sales floor that connects "the front of the store . . . and the rear of the store (including the escalator, passenger elevator, and the sales and service counter)."  (Pl.'s 56.1 ¶ 30; Jimmy Zuehl, Second Expert Report Prepared for Pl. (Feb. 11, 2021), Dkt. 104-1 ("Feb. 2021 Zuehl Report"), at ECF 22–28.)  The "Store posted signage depicting the International Symbol of Accessibility along the accessible main aisles and at the cash register on each floor . . . notifying customers that they can ask Store staff for assistance."  (Pl.'s 56.1 ¶ 12, 30; Decl. of Dominic Marinelli, Dkt. 104 ("Marinelli Decl."), ¶¶ 22, 24; June 2021 Marinelli Report, at ECF 18–20; Defs.' Excerpts of Tr. of Jimmy Zuehl Dep., Dkt. 101-2 ("Defs.' Zuehl Dep. Tr."), at 136:15–22.)  On request, "Store staff widen the aisles between the [moveable merchandise display] racks [] by pulling the racks apart to allow persons in wheelchairs to travel in between the racks of merchandise and between those racks and the Store's side walls."[3]  (Pl.'s 56.1 ¶ 12, 30; *see also* Marinelli Decl. ¶¶ 22, 24; June 2021 Marinelli Report at ECF 20.)  Defendants also remediated the accessibility issues concerning the Store's entrances and exits.  (*See* Pl.'s 56.1 ¶¶ 14–18, 30; June 2021 Marinelli Report at ECF 12–18, 21–22.)

## II.    Procedural History

Plaintiff initiated this action on January 5, 2018, naming as defendants Tropical Emerald and Chaps, Inc. ("Chaps").  (Compl., Dkt. 1.)  On June 21, 2019, Plaintiff filed the operative

---

[3] While this was not Plaintiff's experience during her 2017 visit to the Store, Defendants have put forth evidence demonstrating that the Store has changed its practices in this regard and Plaintiff has not introduced any evidence to the contrary.

Amended Complaint, which dropped Chaps as a defendant and added Rainbow in its place.[4]  (Am. Compl., Dkt. 26 ("Am. Compl.").)  The Amended Complaint alleges that the Store is inaccessible to individuals who use wheelchairs due to a lack of accessible entrances, exits, check-out counters, check-out lines, and routes through the store.  (*Id.* ¶ 26.)

On July 30, 2021, after numerous discovery disputes and extensions (*see, e.g.*, Dkts. 36, 41, 44, 62; 8/26/2019 Docket Order; 10/24/2019 Docket Order; 5/18/2020 Docket Order), Defendants requested a pre-motion conference ("PMC") for an anticipated motion for summary judgment (Dkt. 69).  The Court denied the PMC as unnecessary and granted Defendants leave to file their anticipated motion.  (8/10/2021 Docket Order.)  Defendants served their motion for summary judgment and supporting papers on October 21, 2021.  (*See* Dkt. 74.)

On October 22, 2021, Plaintiff moved to strike the declaration of Rainbow Vice President Hersch, which Defendants had submitted in support of their motion for summary judgment.  (*See* Dkt. 75.)  The Court referred the strike motion to the Honorable Sanket J. Bulsara.  (*See* 10/25/2021 Docket Order.)  Judge Bulsara granted Plaintiff's motion.  (Dkt. 78.)  After Defendants objected (*see* Dkt. 83), the undersigned affirmed in part and modified in part Judge Bulsara's order (Dkt. 89).  Specifically, the Court struck portions of Hersch's declaration, but permitted Defendants to submit an amended Hersch declaration in support of their motion for summary judgment.  (*Id.*)  The Court adopted a revised briefing schedule to allow Defendants to revise their motion for summary judgment and supporting papers accordingly.  (*See* 7/25/2022 Docket Order.)

The motion for summary judgment was fully briefed on March 10, 2023.  (*See* Dkts. 98–110.)  Shortly thereafter, Plaintiff filed a motion to strike "Defendants' Reply to Plaintiff's

---

[4] The Court respectfully directs the Clerk of Court to terminate Chaps, Inc. from the docket in light of the Amended Complaint.  (*See* Dkt. 26.)

Response to Defendants' Statement of Undisputed Material Facts Pursuant to FRCP 56.1" (*see* Defs.' Reply Rule 56.1 Statement, Dkt. 106), and "the 145 lines of footnotes" in the memorandum of law that accompanied Defendants' reply brief.  (Pl.'s Mot. to Strike, Dkt. 111 ("Pl.'s Strike Mot."); *see* Defs.' Reply in Supp. of Mot. for Summ. J., Dkt. 105 ("Defs.' Reply").)  Defendants' motion for summary judgment and Plaintiff's motion to strike are currently before the Court.

## SUMMARY JUDGMENT STANDARD

To obtain summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact," and, thus, that the party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).  "Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of the claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment."  *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

"The moving party bears the burden of showing that he or she is entitled to summary judgment."  *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 267 (E.D.N.Y. 2008).  Where the defendant is the moving party, there is "no express or implied requirement" that the defendant "negat[e] [the plaintiff's] claim" with evidence of its own, as long as it "point[s] out to the district court . . . that there is an absence of evidence to support [the plaintiff's] case."  *Celotex Corp.*, 477 U.S. at 323, 325 (emphasis omitted).  Once a defendant has met this burden, the plaintiff must "do[] more than simply rely on the contrary allegation[s] in her complaint," *Adickes*, 398 U.S. at 160, and "go beyond the pleadings" to "designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted); *see also D'Amico v. City of*

*N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998) (explaining that a non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" to defeat summary judgment) (collecting cases).

## DISCUSSION

Plaintiff's Amended Complaint alleges that the Store is inaccessible to individuals who use wheelchairs due to a lack of accessible entrances, exits, check-out and service counters, check-out lines, and circulation routes through the store.  (Am. Compl. ¶ 26.)  It is undisputed that after Plaintiff's expert Zuehl inspected the Store on May 16, 2018 and again on January 22, 2021 (*see generally* Jimmy Zuehl, Expert Report Prepared for Pl. (May 25, 2018), Dkt. 104-1 ("May 2018 Zuehl Report"), at ECF 2–18; Feb. 2021 Zuehl Report at ECF 19), Defendants remediated the majority of accessibility issues that Zuehl had identified.  (Pl.'s 56.1 ¶ 30; *see also* Defs.' Mem. at 7–8; Am. Compl. ¶ 26.)[5]  Thus, the core issue remaining in this lawsuit is whether the Store's merchandise display areas—and specifically the paths of travel through those areas—violate the ADA and/or its implementing regulations.[6]

---

[5] Because a private individual may obtain injunctive relief only for violations of Title III of the ADA, Title III claims "can become moot if a defendant remedies the access barrier during the pendency of the litigation."  *Bacon v. Walgreen Co.*, 91 F. Supp. 3d 446, 451 (E.D.N.Y. 2015); *see also Thomas v. Ariel W.*, 242 F. Supp. 3d 293, 305 (S.D.N.Y. 2017).  Here, Zuehl initially identified accessibility issues related to the Store's entrances, exits, and circulation routes, but did not identify any issues related to the check-out or service counters.  Plaintiff does not dispute that, after Zuehl's inspections, Rainbow remediated the accessibility issues concerning the entrances, exits, and paths of travel "from the entrance through the middle of the Store, to the sales and service counters, escalators, and elevators."  (Pl.'s 56.1 ¶ 30; *see also* Defs.' Mem. at 7–8.)  Thus, the Court dismisses Plaintiff's claims relating to those accessibility issues as moot.

[6] Plaintiff concedes that "[t]he disputed issues remaining in this litigation concern[] the fixed and non-fixed merchandise display areas."  (Pl.'s Mem. at 2.)  To the extent that the Amended Complaint identified any additional accessibility issues, the Court considers those claims abandoned.  *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016).

## I.    ADA Legal Framework

Title III of the ADA ("Title III") provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182(a); *accord Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008) (quoting 42 U.S.C. § 12182(a)).  To bring a Title III claim, a plaintiff must "establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA."  *Roberts*, 542 F.3d at 368.  For the purposes of this motion, only the last element—whether Plaintiff was discriminated against—is in dispute.

A plaintiff can establish discrimination by demonstrating that a place of public accommodation fails to comply with the applicable accessibility standards.  *See Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 199 (S.D.N.Y. 2016).  The relevant standard depends in part on whether the facility at issue has been "altered . . . in a manner that affects or could affect [its] usability" since the ADA's effective date of January 26, 1992.  *Roberts*, 542 F.3d at 368; *see also* 28 C.F.R. § 36.402(b).  "If alterations [to a facility] have been made, a defendant 'discriminates' if those altered areas—and paths of travel to altered areas that 'contain[] a primary function'—are not made readily accessible to disabled individuals 'to the maximum extent feasible.'"  *Roberts*, 542 F.3d at 369 (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)); *see also Antolini v. Nieves*, No. 19-CV-7645 (VSB), 2022 WL 4219655, at *5 (S.D.N.Y. Sept. 13, 2022) ("[A]ny alteration made to a public accommodation after January 26, 1992 'shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to

and usable by individuals with disabilities, including individuals who use wheelchairs.'" (quoting *Roberts*, 542 F.3d at 367 n.2)).

In the absence of alterations, "a defendant nonetheless 'discriminates' if it fails to remove any existing barriers to accessibility where such removal 'is readily achievable.'" *Roberts*, 542 F.3d at 369 (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)).[7]

## II.   Application to the Merchandise Display Areas

Broadly speaking, Plaintiff contends that the Store's merchandise display areas are inaccessible to individuals who use wheelchairs due to the tight placement of moveable merchandise racks.  (*See generally* Pl.'s Mem.)   As noted, it is undisputed that a wheelchair accessible route (i.e., a path that is at least 36 inches wide) runs through the middle of each sales floor.  (*See* Pl.'s 56.1 ¶ 30); 1991 Standards for Accessible Design ("1991 Standards"), 28 C.F.R. part 36 app. D § 4.2.1.  However, many of the surrounding aisles are too narrow for a wheelchair because the moveable merchandise racks are placed closely together.  (Pl.'s 56.1 ¶ 31.)  Plaintiff also argues that the placement of the moveable merchandise racks obstructs the accessibility of fixed merchandise display racks located on the walls around the perimeter of each floor.  (*See* Pl.'s Mem. at 4–5.)  According to Plaintiff, these accessibility issues amount to discrimination within the meaning of the ADA under either the Alterations Standard or Barrier Removal Standard.  (*See generally* Pl.'s Mem.)  For their part, Defendants argue that only the Barrier Removal Standard applies, and that Plaintiff has failed to carry her burden of proposing a readily achievable method of barrier removal.  (Defs.' Mem. at 10–14.)

---

[7] For ease of reference, the Court refers to these two standards as the "Alterations Standard" and the "Barrier Removal Standard."

A.      **Plaintiff's Claims Under the Alterations Standard**

As noted, the ADA requires a place of public accommodation that makes "alterations" to its facility "to make [the] alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs."  42 U.S.C. § 12183(a)(2); *accord Roberts*, 542 F.3d at 368.  The ADA's implementing regulations define "alteration" as "a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof."  28 C.F.R. § 36.402(b); *accord Range v. 230 W. 41st St. LLC*, No. 17-CV-149 (LAP), 2020 WL 3034800, at *4 (S.D.N.Y. June 5, 2020); *see also Roberts*, 542 F.3d at 369 (explaining that, under the ADA's implementing regulations, "the concept of 'usability' appears to be central to determining whether an alteration has been made").  Consistent with this definition, "[t]he determination whether a facility has undergone an 'alteration' involves a fact-specific inquiry centered on a broad application of the concept of 'usability.'"  *Rosa*, 175 F. Supp. 3d at 206 (citation omitted).  The plaintiff bears the initial burden of production to establish that an alteration occurred.  "If a plaintiff 'identifies a modification to a facility and . . . makes a facially plausible demonstration that the modification is an alteration under the ADA,' the burden shifts to the defendant 'to establish that the modification is in fact not an alteration.'"  *Kreisler v. Second Ave. Diner Corp.*, No. 10-CV-7592 (RJS), 2012 WL 3961304, at *10 (S.D.N.Y. Sept. 11, 2012) (cleaned up) (quoting *Roberts*, 542 F.3d at 371), *aff'd*, 731 F.3d 184 (2d Cir. 2013).  Upon determining that a particular modification qualifies as an "alteration" under the ADA, the Court must then decide "whether the alteration was made readily accessible and usable to disabled individuals to the 'maximum extent feasible.'"  *Roberts*, 542 F.3d at 371 (quoting 42 U.S.C. § 12183(a)(2)).

"Under the ADA's 'maximum extent feasible' requirement, alterations must be made accessible 'except where providing [accessibility] would be virtually impossible in light of the "nature of an existing facility."'" *Range*, 2020 WL 3034800, at *4 (quoting *Roberts*, 542 F.3d at 371). Notably, the "'maximum extent feasible' requirement does not ask the court to make a judgment involving costs and benefits." *Roberts*, 542 F.3d at 371 ("The statute and regulations require that such facilities be made accessible even if the cost of doing so—financial or otherwise—is high."). Moreover, "because both the statute and regulations require that the alterations themselves be made to provide the maximum feasible accessibility, a court's assessment of feasibility must be made with respect to the state of the facility before the alterations in question were made, rather than the facility's post-alteration state." *Id.* at 372. The plaintiff has the initial burden of production of "identifying some manner in which the alteration could be, or could have been, made 'readily accessible and usable by individuals with disabilities, including individuals who use wheelchairs[.]'" *Rosa*, 175 F. Supp. 3d at 206–07 (quoting *Roberts*, 542 F.3d at 372). The defendant then "bears the burden of persuading the factfinder that the plaintiff's proposal would be 'virtually impossible' in light of the 'nature of the facility.'" *Roberts*, 542 F.3d at 372 (quoting 42 U.S.C. § 12183, 28 C.F.R. § 36.402); *see also Range*, 2020 WL 3034800, at *4.

Defendants argue that the Alterations Standard is inapplicable to Plaintiff's claims because the moveable merchandise racks at issue are governed by the ADA's Barrier Removal Standard as a matter of law. (*See, e.g.*, Defs.' Reply at 6.) As Defendants point out, the ADA's implementing regulations explicitly discuss "rearranging . . . display racks" in the context of the Barrier Removal Standard. (Defs.' Mem. at 10 (citing 28 C.F.R. § 36.304(b)(4))); *see also* 28 C.F.R. § 36.304(f) (explaining that, under Barrier Removal Standard, "[t]he rearrangement of temporary or movable

structures, *such as . . . display racks is not readily achievable* to the extent that it results in a significant loss of selling or serving space" (emphasis added)).  Indeed, by contrast, the regulations state that the Alterations Standard applies "to fixed or built-in elements of buildings [or] structures[.]"  28 C.F.R. § 36.406(b).  A U.S. Department of Justice ("DOJ") opinion letter and the DOJ's Technical Assistance Manual also support this interpretation.  (*See* U.S. Dep't of Justice, Opinion Letter 213 (Feb. 10, 1998), Dkt. 101-3, at ECF 4 ("[T]he ADA requires that accessible paths be provided to all fixed racks and shelving in new construction, and that accessible paths be provided to movable racks to the extent that it is 'readily achievable' to do so.")); *see also* U.S. Dep't of Justice, ADA Title III Technical Assistance Manual (Nov. 1, 1993), at 4.5100, https://www.ada.gov/resources/title-iii-manual/ (last visited March 28, 2024).  Additionally, courts "have expressed reluctance" to apply the Alterations Standard to moveable objects, including moveable merchandise display racks.  *Thomas*, 242 F. Supp. 3d at 304–05 (citing *Eiden v. Home Depot USA, Inc.*, No. 04-CV-977 (LKK), 2006 WL 1490418, at *12 (E.D. Cal. May 26, 2006)); *see, e.g.*, *Colo. Cross-Disability Coal. v. Too (Del.), Inc.*, 344 F. Supp. 2d 707, 709–15 (D. Colo. 2004) (concluding that the Barrier Removal Standard applied to moveable display racks in the defendant's stores); *see also Thomas v. Kohl's Corp.*, No. 17-CV-5857, 2018 WL 704691, at *4–5 (N.D. Ill. Feb. 5, 2018) (applying Barrier Removal Standard to moveable display racks in store); *Kamal v. Kohl's Corp.*, No. 18-CV-25 (JDP), 2019 WL 1051007, at *2–3 (W.D. Wis. Mar. 5, 2019) (same); *Lieber v. Macy's W., Inc.*, 80 F. Supp. 2d 1065, 1077 (N.D. Cal. 1999) ("[T]he spacing of moveable display racks is governed by the more general 'readily achievable' [Barrier Removal Standard] of the ADA.").  The Court therefore concludes that the Alterations Standard is inapplicable to Plaintiff's claims concerning the aisles between the moveable merchandise

display racks.  *See infra* Discussion § II.B (discussing Plaintiff's claims under the Barrier Removal Standard).

Nevertheless, Plaintiff argues that the Alterations Standard "applies because Defendants admit that 'to accommodate their occupancy, Rainbow Shop completed alterations prior to [] March 15, 2012 (in 2005)[.]'" (Pl.'s Mem. at 5.)[8]  Plaintiff cites to a footnote in Defendants' brief, which states that "alterations were completed before [] 2012" (*see* Defs.' Mem. at 10 n.16), and a single sentence in the report of Defendants' expert, Dominic Marinelli, explaining that, "[t]o accommodate their occupancy, Rainbow [] completed alterations prior to [] March 15, 2012 (in 2005)" (*see* June 2021 Marinelli Report at ECF 12).  Plaintiff does not, however, cite to any evidence concerning the scope or nature of those alterations.[9]  (*See generally* Pl.'s Mem. at 5–6);

---

[8] The relevance of March 15, 2012 is that alterations performed after that date must comply with more recent ADA standards, commonly referred to as the 2010 Standards, whereas alterations begun prior to that date could choose to comply with the 1991 Standards.  *See Thomas*, 242 F. Supp. 3d at 299–300 (citing 28 C.F.R. § 36.406 *et seq.*).  Alterations performed between the ADA's effective date and March 15, 2012 are typically evaluated under the 1991 Standards.  *See id.*

[9] In her brief, Plaintiff also argues that "Defendants performed over one million dollars' worth of alterations to the interior of the Store" in 2012.  (Pl.'s Mem. at 5–6.)  To support this argument, Plaintiff cites to a "Cost Affidavit," which is attached as an exhibit to a declaration submitted by Plaintiff's counsel (*see* Dkts. 108, 108-1), that Defendants purportedly filed with the New York City Department of Buildings (*see* Pl.'s Mem. at 5–6).  Notably, however, Plaintiff does not cite to this document anywhere in her 56.1 Statement, including in response to Defendants' assertion that the Store had not been altered within the meaning of the ADA after March 15, 2012. (*See* Pl.'s 56.1 ¶ 5.)  The Court further notes that, somewhat bafflingly, Plaintiff did not submit any statement of additional facts.  (*See generally* Pl.'s 56.1.)  In any event, this evidence does not establish whether the alterations were made to the merchandise display areas at issue in this case or whether the alterations listed in the document were actually completed.  (*See* Dkt. 108-1; *see also* Pl.'s Mem. at 5 (noting that the document identifies alterations such as "modification to interior partitions, flooring, installed cash wraps, and architectural modifications associated with new escalator openings, slat walls [sic] finishes, painting" (quoting Dkt. 108-1))); *see Lockhart v. Coreas*, No. 10-CV-1644 (SJF) (ETB), 2011 WL 2516569, at *10 (E.D.N.Y. June 21, 2011) (concluding that similar document was insufficient to demonstrate "the absence of an issue of whether defendant actually made alterations that would require compliance with the ADA").  Moreover, given that Plaintiff provides no information concerning the source of this document, it

*Antolini*, 2022 WL 4219655, at *8 (concluding that plaintiff failed to meet her burden of showing alterations occurred where plaintiff pointed to no evidence "demonstrating that alterations occurred or, even if they had, what features of the [p]remises were altered, when they were altered, or how they were altered"). Critically, the Alterations Standard is "not triggered by *any* alteration to a property writ large; the alteration and the alleged violation must relate to the same '*portions* of the facility.'" *Antolini v. Thurman*, No. 19-CV-9674 (JMF), 2021 WL 3115169, at *6 (S.D.N.Y. July 21, 2021) (quoting 42 U.S.C. § 12183(a)(2)), *aff'd*, No. 21-2028-CV, 2023 WL 1113535 (2d Cir. Jan. 31, 2023) (summary order); *see also Kreisler*, 2012 WL 3961304, at *10 ("[T]he ADA guidelines clarify that minor changes do not trigger sweeping obligations. For example, if a door handle is replaced, the new handle must be compliant, but the entire door need not be replaced."). Although Plaintiff contends that the 2005 alterations required Defendants "to provide an accessible path of travel" to the fixed merchandise displays on the Store's walls (*see* Pl.'s Mem. at 5, 7–9), she offers no evidence that Defendants made alterations to the fixed merchandise display units or the merchandise display areas more generally. *See Antolini*, 2021 WL 3115169, at *8 (concluding that plaintiff had failed to plausibly demonstrate a nexus between the alleged modifications and violations). Nor is this issue clearly documented in Plaintiff's expert report, which more generally discusses the width of the aisles between "merchandise display racks" (Feb. 2021 Zuehl Report at ECF 22–29), and provides only one example of a narrow aisle between the merchandise display racks and the wall (*id.* at ECF 24). *But see* Pl.'s Excerpts of Tr. of Jimmy Zuehl Dep., Dkt. 108-2, at 218:2–5 ("The point is you have fixed or built-in elements that, as my report indicates, are not on an accessible route because [the moveable] racks are [] blocking access to [them].").)

---

is unclear whether this document is properly authenticated or admissible at all. *See Lockhart*, 2011 WL 2516569, at *10.

Even assuming that the fixed merchandise display areas were altered and that Plaintiff were able to prove that the paths of travel to those areas are inaccessible, Plaintiff's claim would fail for an additional reason.  Plaintiff's "path of travel" claim under 42 U.S.C. § 12183(a)(2) requires her to propose a remedy that considers costs.  *See Roberts*, 542 F.3d at 372–73, 376 (citing 28 C.F.R. § 36.403).  Section 12183(a)(2) requires "paths of travel to altered areas that contain a primary function" be "made readily accessible . . . to the maximum extent feasible," provided that such alterations "are not disproportionate to the overall alterations in terms of cost and scope."  *Id.* at 368–69 (cleaned up).  "A plaintiff challenging the accessibility of the paths of travel . . . serving an altered area containing a primary function bears an initial burden of production that the area in question is covered by the statute and that the desired access may be achieved with a cost and scope not disproportionate to the overall alteration."  *Id.* at 372.  "This burden may be met with cost estimates that are facially plausible, without reference to design details, and are such that the defendant can assess its feasibility and cost."  *Id.*  Here, Plaintiff's proposed solution provides no assessment of costs whatsoever.  *See infra* Discussion § II.B (discussing Plaintiff's failure to consider costs in the context of the Barrier Removal Standard).[10]

Accordingly, Plaintiff's claims purportedly alleging violations of the ADA under the Alterations Standard are dismissed.[11]

---

[10] Many cases analyze claims concerning moveable display racks and other moveable objects that block circulation paths under 28 C.F.R. § 36.211(a), which requires a place of public accommodation to "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities[.]" 28 C.F.R. § 36.211(a); *see, e.g.*, *Chapman v. Pier 1 Imports (U.S.) Inc.*, 779 F.3d 1001, at 1007–09 (9th Cir. 2015); *Curtis v. Home Depot U.S.A., Inc.*, No. 13-CV-1151 (AWI), 2015 WL 351437, at *4–6 (E.D. Cal. Jan. 23, 2015).  Here, Plaintiff does not reference this particular provision, so the Court does not consider the extent to which it is applicable to Plaintiff's claims.

[11] The Court also notes that while there is some indication that some of the display racks on the walls are too high for someone in a wheelchair to reach (Pl.'s 56.1 ¶ 13), this condition is not documented in Plaintiff's expert report nor does Plaintiff explicitly discuss this issue in her

## B.      Plaintiff's Claims Under the Barrier Removal Standard

Defendants argue that summary judgment is proper because the applicable standard is the Barrier Removal Standard and Plaintiff has failed to demonstrate that her proposal for barrier removal is "readily achievable."  (*See* Defs.' Mem. at 12–14.)[12]  The Court agrees and dismisses Plaintiff's claims under the Barrier Removal Standard.

Under the Barrier Removal Standard, a defendant must "remove any existing barriers to accessibility where such removal 'is readily achievable.'"  *Roberts*, 542 F.3d at 369 (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)).  "'[R]eadily achievable' means easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).  "Factors to be considered when determining if a modification is readily achievable include: (1) the nature and costs of needed changes; (2) the financial resources of the facility, number of employees, effect on expenses and resources, and other impact on the facility; (3) the financial resources and size of the defendant; and (4) the type of operations at the facility and relationship between the facility and the defendant."  *Kreisler*, 2012 WL 3961304, at *6 (citing 42 U.S.C. § 12181(9)).  The initial burden is on the plaintiff to "articulate a plausible proposal for barrier removal, 'the costs of which,

---

brief.  Further, the Amended Complaint does not clearly articulate this issue as it focuses on the aisle width without mentioning the height of the racks.  (Am. Compl. ¶ 26.)  The Court therefore does not view Plaintiff's claims as being based on height of the wall racks, or to the extent she is making such a claim, it has been abandoned.  *See Antolini*, 2021 WL 3115169, at *5 ("[P]laintiff's argument fails for the simple reason that he fails to allege many, if not all, of these barriers in the operative [c]omplaint.");  *id.* (explaining that while a plaintiff may raise claims regarding subsequently-discovered ADA violations, such claims must be stated "in a proper pleading," such as an amended complaint).

[12] Defendants also argue that they have satisfied their corresponding burden of demonstrating that Plaintiff's proposal is not readily achievable and that they provide accommodations through alternative methods.  The Court need not, and therefore does not, address these arguments but agrees at least to the latter point.  *See supra* Background § I.C (discussing the Store's efforts to provide access through alternative methods).

facially, do not clearly exceed its benefits.'" *Roberts*, 542 F.3d at 373 (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)).  "Neither the estimates nor the proposal are required to be exact or detailed, for the defendant may counter the plaintiff's showing by meeting its own burden of persuasion and establishing that the costs of a plaintiff's proposal would in fact exceed the benefits." *Id.*  "Once the plaintiff meets its burden, the burden shifts to the defendant to 'establish[ ] that the costs of a plaintiff's proposal would in fact exceed the benefits.'" *Kreisler*, 2012 WL 3961304, at *7 (quoting *Roberts*, 542 F.3d at 373).  When barrier removal is not readily achievable, the public accommodation must make its "goods, services, facilities . . . or accommodations available through alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v).

Plaintiff's sole proposal for removing the barriers in the merchandise display areas is for Rainbow to "[r]earrange the merchandise display racks so that accessible routes are provided within the sales floor areas." (Feb. 2021 Zuehl Report at ECF 22–29.)  However, Plaintiff provides no evidence regarding the feasibility of this proposal or its potential costs.  (*See generally id.*)  To the contrary, Zuehl, Plaintiff's expert, testified that he was not asked to provide cost estimates for his recommendations.  (Pl.'s 56.1 ¶ 56; Zuehl Dep. Tr. at 115:21–23 (Zuehl testifying that he "was not asked to provide estimates for this work or these recommendations").)  Nor did Zuehl opine as to how Rainbow should rearrange the moveable merchandise racks or whether Rainbow would have to permanently remove any of the racks.  (Pl.'s 56.1 ¶ 57; Zuehl Dep. Tr. at 156:7–24.)  Although neither Plaintiff's "estimates nor [Plaintiff's] proposal are required to be exact or detailed," *Roberts*, 542 F.3d at 373, Plaintiff "must provide at least *some* estimate of costs." *Kreisler*, 2012 WL 3961304, at *7–10 (concluding that plaintiff "failed to meet his burden of establishing that widening [an] aisle in [a] [d]iner [was] readily achievable" where plaintiff failed

to "provide *any* estimate of the cost of widening the aisle"); *see also, e.g.*, *Heard v. Statue Cruises, LLC*, No. 16-CV-1079 (ALC) (BCM), 2022 WL 4611457, at *2 (S.D.N.Y. Sept. 30, 2022) (denying plaintiff's ADA claim where plaintiff's expert did not provide "cost figures regarding any proposed barrier removal"); *Antolini*, 2022 WL 4219655, at *6–8 (granting summary judgment for defendant where, *inter alia*, plaintiff's expert report "[did] not provide any analysis or proposal, let alone any type of evaluation of the costs and benefits"). Here, Plaintiff "has failed to meet even [her] admittedly light burden" of articulating how the removal of the barriers in the Store's merchandise display areas is readily achievable. *Antolini v. McCloskey*, No. 19-CV-9038 (GBD) (SD), 2022 WL 2763367, at *7 (S.D.N.Y. May 10, 2022), *R. & R. adopted*, 2022 WL 3448734 (S.D.N.Y. Aug. 17, 2022).

Plaintiff's contrary arguments are unavailing. The conclusory assertion in Plaintiff's brief that there would be "no cost to perform [the] rearrangement" (Pl.'s Mem. at 17), lacks evidentiary support and is insufficient to show a genuine issue of material fact. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (explaining that "[a] party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory . . . or based on speculation" (citations omitted) (collecting cases)). Nor is this the rare case where Plaintiff's proposed remedy is so "simple" and involves obviously "de minimis" associated costs, that a lack of specifics can be excused. (*See* Pl.'s Mem. at 17–18 (citing *Celeste v. E. Meadow Union Free Sch. Dist.*, 373 F. App'x 85, 88–89 (2d Cir. 2010) (summary order)).) Those cases typically involve simple renovations with inexpensive upfront costs. *See Celeste*, 373 F. App'x at 88–89 (concluding that plaintiff satisfied his burden by suggesting that his school install curb cuts, fix the pavement, and remove cleat cleaners); *Range*, 2020 WL 3034800, at *6 (finding that plaintiff's proposal of removing sheetrock from a doorway

18

was the type of "plausible, simple" remedy that could be accepted "without an estimate on cost"). Here, by contrast, Rainbow Vice President Hersch testified that there was no room on Rainbow's sales floors to fit additional fixtures and merchandise (Tr. of Dep. of Jonathan Hersch, Dkt. 108-3, at 36:12–37:7), and the ADA's implementing regulations explicitly contemplate that "[t]he rearrangement of temporary or moveable structures, such as . . . display racks is not readily achievable to the extent that it results in a significant loss of selling or serving space," *see* 28 C.F.R. § 36.304(f).  Plaintiff does not even attempt to grapple with these considerations, and thus, the Court concludes that Plaintiff would be unable to meet her burden of showing a "readily achievable" proposal for barrier removal at trial.  *See Antolini*, 2023 WL 1113535, at *2 (affirming district court's decision granting summary judgment for defendant where the record showed plaintiff "could not meet his burden to demonstrate a 'readily achievable' removal at trial").[13]

Accordingly, Plaintiff's claims under the Barrier Removal Standard must be dismissed.

## III.   Plaintiff's Claims Under New York State and City Law

Finally, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims under the New York State Executive Law, the New York City Administrative Code, and the New York State Civil Rights Law, to the extent that such claims remain at issue.  *See* 28 U.S.C. § 1367. "Whether to exercise supplemental jurisdiction 'is within the sound discretion of the district

---

[13]  Plaintiff also argues that she "cannot offer evidence of the financial impact to [] Defendants' business because [] Defendants did not provide Plaintiff with any documents or witness testimony during discovery from which Plaintiff could assess such an impact."  (Pl.'s Mem. at 18.)  This argument is completely unavailing.  There are other costs associated with whether a proposal is readily achievable "apart from Defendants' ability to pay."  *See Antolini*, 2021 WL 3115169, at *4.  For example, plaintiffs in other cases involving moveable merchandise display racks have put forth evidence concerning practices at other store locations and store policies to meet their initial burden of establishing a readily achievable proposal.  *E.g.*, *Ryan v. Kohl's Corp.*, No. 17-CV-5854, 2018 WL 4616355, at *4–5 (N.D. Ill. Sept. 26, 2018); *Thomas*, 2018 WL 704691, at *4–5.

court.'" *Antolini*, 2022 WL 4219655, at \*8–9 (quoting *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 117 (2d Cir. 2013)).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Id.* at \*8 (quoting *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)).  Because the Court dismisses Plaintiff's claims under the ADA, "the balance of factors counsel in favor of declining supplemental jurisdiction."  *Id.* ("Allowing Plaintiff to pursue its state law claims in state court would 'avoid needless decisions of state law by this Court, which also promotes the interests of comity and justice.'" (quoting *Moran v. Tryax Realty Mgmt., Inc.*, No. 15-CV-8570 (RJS), 2016 WL 3023326, at \*4 (S.D.N.Y. May 23, 2016))).

Accordingly, Plaintiff's state law claims are dismissed without prejudice to their being refiled in state court.

## PLAINTIFF'S MOTION TO STRIKE

Plaintiff moves to strike Defendants' Reply Rule 56.1 Statement and "the 145 lines of footnotes in Defendants' [reply brief]."  (*See* Pl.'s Strike Mot. (citing Dkts. 105–106).)  The Court denies this motion in its entirety.

"Whether to grant or deny a motion to strike is vested in the trial court's sound discretion."  *See Peters v. Molloy Coll. of Rockville Ctr.*, No. 07-CV-2553 (DRH), 2010 WL 3170528, at \*1 (E.D.N.Y. Aug. 10, 2010) (citation omitted); *Gurrieri v. Cnty. of Nassau*, No. 16-CV-6983 (ADS) (SIL), 2018 WL 6590564, at \*7 (E.D.N.Y. Dec. 14, 2018) ("Ultimately, it is within the [c]ourt's discretion whether to strike portions of reply papers."); *see also Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 513 F. Supp. 2d 18, 19 (S.D.N.Y. 2007).

Here, Plaintiff argues that Defendants' Reply Rule 56.1 Statement "must be stricken" because "Local Civil Rule 56.1 does not provide for a 'reply' in further support of a Rule 56.1

statement of undisputed facts." (Pl.'s Strike Mot. at 1 (purportedly quoting *Sattar v. U.S. Dep't of Homeland Sec.*, 669 F. App'x 1, 3 (2d Cir. 2016) (summary order)).) First, as Defendants point out, *Sattar* does not discuss replies to 56.1 statements at all, and Plaintiff clearly cites to the wrong case for this quote and proposition. (*See* Defs.' Opp'n to Pl.'s Mot. to Strike, Dkt. 112); *see generally Sattar*, 669 F. App'x 1. Second, although Plaintiff is correct that "Local Civil Rule 56.1 does not provide for a 'reply,'" it is also true that "the Rule does not prohibit such replies." *See Cap. Recs., LLC v. Vimeo, LLC*, No. 09-CV-10101 (RA), 2018 WL 4659475, at *1 (S.D.N.Y. Sept. 7, 2018).[14] Aside from generally arguing that such replies are "improper," Plaintiff does not articulate any specific prejudice resulting from Defendants' Reply Rule 56.1 Statement, nor does she request to file a sur-reply. (*See generally* Pl.'s Strike Mot.); *cf. Pape v. Dircksen & Talleyrand Inc.*, No. 16-CV-5377 (MKB) (SJB), 2019 WL 1435882, at *2 (E.D.N.Y. Feb. 1, 2019) (noting that, while "[t]here is nothing wrong with [submitting a reply 56.1 statement]," it was improper for the defendants to include evidence that was not cited to in their original statement), *R. & R. adopted*, 2019 WL 1441125 (E.D.N.Y. Mar. 31, 2019).[15]

Similarly, while Plaintiff contends that the footnotes in Defendants' reply brief are improper because they contain substantive legal arguments and are "a transparent effort to circumvent page limitations" (*see* Pl.'s Strike Mot. at 2–3), she again fails to argue or demonstrate that she was prejudiced by the footnotes in any way. Ultimately, the Court's rules do not impose

---

[14] Notably, in *Capital Records*, the court *denied* the defendants' motion to strike the plaintiff's reply 56.1 statement. *Id.*

[15] Plaintiff does not argue that Defendants' Reply Rule 56.1 Statement contained evidence not cited to in their original 56.1 statement. However, the Court notes that *both* parties' 56.1 statements include impermissible legal arguments, which the Court has disregarded. (*See generally* Dkts. 99, 106, 110); *Pape*, 2019 WL 1435882, at *2 ("Arguments are impermissible in any Rule 56.1 Statement and are to be disregarded.").

a limit on the number of footnotes a party may use, but even so, "[t]he Court enjoys broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Bank v. Spark Energy, LLC*, No. 19-CV-4478 (PKC) (LB), 2020 WL 6873436, at *6 (E.D.N.Y. Nov. 23, 2020) (internal quotation marks and citations omitted), *aff'd*, 860 F. App'x 205 (2d Cir. 2021) (summary order).  Moreover, the disposition of Defendants' summary judgment motion would not have been different had the Court declined to consider the objected-to materials; in other words, Defendants' inclusion of those footnotes had no impact on the Court's resolution of that motion.  *See Madorskaya v. Frontline Asset Strategies, LLC*, No. 19-CV-895 (PKC) (RER), 2021 WL 3884177, at *18 (E.D.N.Y. Aug. 31, 2021).  Accordingly, the Court finds it unnecessary to strike any portion of Defendants' reply papers, as Plaintiff has not suffered any prejudice.  *See id.*; *see also Bank*, 2020 WL 6873436, at *6 (declining to strike portions of reply where party moving to strike had not suffered prejudice "from the unauthorized and overly long reply" (citing *Nat'l Grid Corp. Servs. v. Brand Energy Servs., LLC*, No. 13-CV-1275 (DRH) (ARL), 2017 WL 1194499, at *10 n.7 (E.D.N.Y. Mar. 30, 2017) (denying defendant leave to file a motion to strike pages of plaintiff's reply that exceeded the court's local rules, based on the lack of prejudice to defendant))).

Based on the foregoing, Plaintiff's motion to strike is denied in its entirety.

## CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment is granted. Additionally, Plaintiff's motion to strike is denied. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  March 30, 2024
        Brooklyn, New York